UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

COUNTER TERRORIST GROUP US,                   :
COUNTERR GROUP, and J. K. IDEMA,              :
                                              :        08 Civ 2356 (DAB)
                       Plaintiffs,            :
                                              :
           - against -                        :
                                              :
AUSTRALIAN BROADCASTING CORP.;                :
a/k/a ABC AUSTRALIA; ABC                      :
CORPORATIONS 1-100; LIZ JACKSON;              :
ERIC CAMPBELL; JOSEPH A CAFASSO;              :
EDWARD A. ARTIS; KNIGHTSBRIDGE                :
INTERNATIONAL, INC.; KNIGHTSBRIDGE            :
INTERNATIONAL HUMANITARIAN                    :
RELIEF AND HUMAN IMPROVEMENT                  :
PROGRAMS, INC.; ROBERT C. MORRIS;             :
PARTNERS INTERNATIONAL                        :
FOUNDATION; WILLIAM JOHN HAGLER,              :
Both Individually and Severally, and DOES 1   :
through 7, inclusive,                         :
                                              :
                       Defendants.            :

---------------------------------------------------------- x


## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS FOR LACK OF SUBJECT MATTER
## JURISDICTION AND *FORUM NON CONVENIENS*


**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway**
**New York, New York  10019**
**(212) 489-8230**


*Attorneys for Defendants*
*Australian Broadcasting Corporation and*
*Liz Jackson*

# TABLE OF AUTHORITIES

## CASES

*Aguinda v. Texaco, Inc.*, Nos. 01-7756L, 01-7758C, 2002 WL 1880105 (2d Cir. Aug. 16, 2002) .................................................................................................................22

*Alcoa S. S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147 (2d Cir. 1980).............................18, 19

*Allstate Life Insurance Co. v. Linter Group, Ltd.*, 994 F.2d 996 (2d Cir.), *cert. denied*, 510 U.S. 945 (1993).........................................................................................................23

*Armstrong v. Virgin Records, Ltd.*, 91 F. Supp.2d 628 (S.D.N.Y. 2000) ...................................10

*AroChem Intern., Inc. v. Buirkle*, 968 F.2d 266 (2d Cir. 1992).................................................25

*Badon v. RJR Nabisco Inc.*, 224 F.3d 382 (5th Cir. 2000) ........................................................17

*Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) ........................................................12

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) .....................................................12

*Blanco v. Banco Industrial de Venezuela*, 997 F.2d 974 (2d Cir. 1993) ...................................22

*Bybee v. Oper Der Standt Bonn*, 899 F. Supp. 1217 (S.D.N.Y. 1995).......................................23

*Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234 (2d Cir. 2004).........................18

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir. 1990)................................................14

*CCS Intern., Ltd. v. ECI Telesystems, Ltd.*, No. 97 Civ. 4646 (LAP), 1998 WL 512951 (S.D.N.Y. Aug. 18, 1998) .............................................................................................26

*De Bardossy v. Puski*, 763 F. Supp. 1239 (S.D.N.Y. 1991) .......................................................10

*De Young v. Beddone*, 707 F. Supp. 132 (S.D.N.Y. 1989).........................................................23

*First Union National Bank v. Paribas*, 135 F. Supp.2d 443 (S.D.N.Y. 2001) .......................21, 22

*Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157 (5th Cir. 1992).......................15

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)...................................................................23, 26

*Idema v. Wager*, 120 F. Supp.2d 361 (S.D.N.Y. 2000), *aff'd*, 29 Fed. App'x 676 (2d Cir. 2002) .........................................................................................................................25

*Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662 (C.D. Cal. 1993) ...............15

*Interpane Coatings, Inc. v. Australia and New Zealand Banking Grp., Ltd.*, 732 F. Supp. 909 (N.D. Ill. 1990)...........................................................................................................15

*Iragorri v. United Technology Corp.*, 274 F.3d 65 (2d Cir. 2001) ....................................... *passim*

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998)..................25

*Klaxon Co. v. Stentor Electrical Manufacturing Co.*, 313 U.S. 487 (1941)...............................24

*Linder Fund, Inc. v. Polly Peck International PLC*, 811 F. Supp. 133 (S.D.N.Y. 1992).............23

*McBee v. Delica Co., Ltd.*, 417 F.3d 107 (1st Cir. 2005) ............................................................12

*Metropolitan-Goldwynn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).............11, 13

*Moscovitz v. Magyar Cukor Rt.*, No. 00 Civ. 0031, 2001 WL 767004 (S.D.N.Y. July 9, 2001) .........................................................................................................22

*Murray v. British Broadcasting Corp.*, 81 F.3d 287 (2d Cir. 1996).........................................25

*New Hampshire Insurance Co. v. Sphere Drake Ins. Ltd.*, No. 01 Civ. 3226 (BSJ), 2002 WL 1586962 (S.D.N.Y. July 17, 2002) ..................................................................22

*New Name, Inc. v. Walt Disney Co.*, No. 07 Civ. 5034, 2007 WL 5061697 (C.D. Cal. Dec. 3, 2007) ......................................................................................................11

*Newborn v. Yahoo!, Inc.*, 391 F. Supp.2d 181 (D.C. Cir. 2005)...........................................13, 14

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989).......................................................14

*Odyssey Re (Londong) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp.2d 282 (S.D.N.Y. 2002) ....................................................................................................................18

*Overseas National Airways, Inc. v. Cargolux Airlines International, S.A.*, 712 F.2d 11 (2d Cir. 1983)....................................................................................................................24

*PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998) ..............................17

*Payday Advance Plus, Inc. v. Findwhat, Inc.*, 478 F. Supp. 2d 496 (S.D.N.Y. 2007)...........25

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)...........................................................15, 18, 21, 24

*Realuyo v. Villa Abrille*, 01 Civ. 10158, 2003 WL 21537754 (S.D.N.Y. July 8, 2003)...............12

*SAAB v. Citibank, N.A.*, No. 00 Civ. 6784 (BSJ), 2001 WL 1382577
(S.D.N.Y. Nov. 7, 2001) ..........................................................................................24

*Scottish Air Intern., Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224
(2d Cir. 1996)...............................................................................................18, 23

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, __ U.S. __, 127 S. Ct.
1184 (2007) ............................................................................................14, 16, 18

*Subafilms, Ltd. v. MGM-Pathe Committee Co.*, 24 F.3d 1088 (9th Cir. 1994) ....................10, 11

*Test Masters Educ. Serv., Inc. v. NYP Holdings, Inc.*, No. 06 CV 11407 (BSJ),
2007 WL 4820968 (S.D.N.Y. Sept. 18, 2007)..................................................25

*Twentieth Century Fox Film Corp. v. IcraveTV*, No. Civ. A. 00-121,00-120,
2000 WL 255989 (W.D. Pa. Feb. 8, 2000) .......................................................11

*United Features Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp.2d 198
(S.D.N.Y. 2002) ................................................................................................11

*Update Art, Inc. v. Modiin Public, Ltd.*, 843 F.2d 67 (2d Cir. 1988) .............................10

*USHA (India), Ltd. v. Honeywell Intern., Inc.*, 421 F.3d 129 (2d Cir. 2005) ...............14

*Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd.*, No. 02 Civ. 1151 (CVM),
2003 WL 42001 (S.D.N.Y. 2003) ....................................................................10

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) .........................17

*Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921) ............................................17

*Yung v. Lee*, No. 00 Civ. 3965 (DAB), 2002 WL 31008970 (S.D.N.Y. 2002) .............17

*Yung v. Lee*, Nos. 04-3139-CV, 04-3320-CV, 160 Fed. Appx. 37,
2005 WL 3453820 (2d Cir. Dec. 15, 2005) .............................................15, 17

## STATUTES

Fed. R. Civ. P.12(b)(1)...............................................................................................3

Fed. R. Civ. P. 21    .................................................................................................14

28 U.S.C. § 1332(a)(3)  ...........................................................................................14

N.Y. CPLR § 302(a)  ...............................................................................................12

## MISCELLANEOUS

Patry, Choice of Law and International Copyright, 48 Am. J. Comp. L. 383 (2000) ...................11

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT .......................................................................... 1

FACTS ............................................................................................................... 3

    A.  THE PROGRAM CRITICIZES THE MEDIA'S USE OF JACK IDEMA ............ 3

    B.  PLAINTIFFS ALLEGE AN INTERNATIONAL CONSPIRACY TO
        DEFAME AND UNLAWFULLY IMPRISON IDEMA ...................................... 4

    C.  IDEMA HAS INITIATED LAWSUITS AGAINST MANY OTHER MEDIA
        ENTITIES AND MANY OF THE SOURCE DEFENDANTS BEFORE ................ 5

    D.  PLAINTIFFS' CLAIMS IN THIS ACTION ................................................... 6

    E.  THE ABC IS A FOREIGN ENTITY WITH LITTLE
        CONTACT IN THE UNITED STATES ........................................................ 7

ARGUMENT ...................................................................................................... 8

    I.  THIS COURT LACKS SUBJECT MATTER JURISDICTION .................... 8

        A. NO PREDICATE ACT OF INFRINGEMENT OCCURRED IN THE UNITED STATES ....... 8

        B. DOMESTIC ACCESSIBILITY DOES NOT CREATE A PREDICATE ACT
            UNDER THE COPYRIGHT ACT ........................................................... 9

        C. THERE IS NO SECONDARY LIABILITY FOR MERELY ALLOWING
            ALLEGEDLY INFRINGING CONTENT TO BE VIEWED IN THE UNITED STATES ........ 12

    II.  THE COURT SHOULD DISMISS THE COMPLAINT
        UNDER THE DOCTRINE OF FORUM NON CONVENIENS ............................. 13

        A. AUSTRALIA IS AN ADEQUATE ALTERNATIVE FORUM ........................... 14

        B. IDEMA'S CHOICE OF FORUM IS NOT ENTITLED TO PARTICULAR DEFERENCE ... 17

        C. THE PUBLIC AND PRIVATE FACTORS OVERWHELMINGLY FAVOR AUSTRALIA
            AS THE APPROPRIATE FORUM ........................................................ 20

            1. Private Interest Factors Strongly Favor Dismissal........................ 20

            2. Public Interest Factors Strongly Favor Dismissal ....................... 22

CONCLUSION ................................................................................................. 25

## PRELIMINARY STATEMENT

This action arises from an Australian television program produced and broadcast by defendant The Australian Broadcasting Corporation (the "ABC") exclusively in Australia. The program is part of a series entitled *Media Watch* (the "Series"). As its title suggests, the Series critically examines the conduct of the media, largely in Australia. Plaintiffs complain about one *Media Watch* episode entitled *Jack of All Trades* (the "Program"). The "Jack" of that title is plaintiff J.K. Idema, a self-professed counter-terrorist and ex-convict operating in Afghanistan. The Program explores the media's reliance on Mr. Idema as an expert with respect to events in Afghanistan (and to some extent Iraq) without at the same time revealing critical facts about his background and his nature that, the Program suggests, may be germane to his expertise and credibility.

In the course of telling the story, the ABC criticizes its own past reporting through defendant Eric Campbell, who relied on Mr. Idema's supposed expertise in several stories broadcast by the ABC about Afghanistan. Among background materials used briefly in the Program are three photographs depicting Mr. Idema and Afghani prisoners (the "Torture Photos"). Mr. Idema claims he holds a United States copyright registration for those photographs and that their use on the Program (and posting on the ABC website in Australia) constitutes copyright infringement. The Program also includes approximately 25 seconds of certain tapes which, according to Mr. Idema, show activities in terrorist training camps in Afghanistan (the "Terrorist Training Tapes"). The veracity of those Tapes is in question. Mr. Idema claims to own the physical copies, but not the copyright in these Tapes. A brief portion of the Tapes was used in the Program to illustrate certain questions regarding their *bona fides* and Mr. Idema's credibility. They do not appear on the ABC website.

Plaintiffs in this action (Mr. Idema and two North Carolina corporations he owns and/or controls) have sued the ABC, as well as Mr. Campbell and the narrator of the Program, Liz Jackson,

alleging, *inter alia*, copyright infringement under United States law with respect to the Torture Photos; breach of an agreement allegedly entered into by Mr. Campbell with respect to use of the Terrorist Training Tapes; and a host of various and sundry other torts. None of the events in question involving the ABC, Mr. Campbell or Ms. Jackson (collectively, the "ABC Defendants") have any remote connection whatsoever with this country, not to speak of the State of New York.

There simply is no basis for Mr. Idema to proceed against the ABC Defendants before this Court. Indeed, he himself has no real connection or tie to this State; he alleges that he resides in New York but, as set forth in the accompanying affidavit of Edward J. Davis, sworn to May 20, 2008 ("Davis Aff't), that does not appear to be the case; rather he appears to be a United States citizen without domestic domicile. Regardless, his alleged residence in this State, standing alone, would be insufficient reason for this Court to become embroiled in what is clearly a controversy arising under and governed by the laws of Australia, against Australia's primary national broadcaster, addressed to a story broadcast only in Australia to its citizenry, about Australian media coverage featuring Mr. Idema.

In apparent upfront recognition that invoking the jurisdiction of the United States courts under these circumstances makes no sense, plaintiffs attempt to window dress their complaint by naming a second category of defendants, referred to herein as the "Source Defendants". The Source Defendants allegedly supplied either documents or information about Mr. Idema to the ABC which was used on or in connection with the Program. None of these additional defendants has been served; none is resident in or a citizen of New York. Further, as explained in the accompanying Davis Aff't, virtually all of them have already been sued by Mr. Idema and/or his various companies for the same conduct (with other media defendants) he complains of in this action.

The ABC and Ms. Jackson therefore move to dismiss this action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P., Rule 12(b)(1) as, contrary to plaintiffs' boilerplate

allegation, there is no federal question here since the copyright infringement claims alleged do not arise under the laws of the United States, and there is no diversity jurisdiction in the absence of complete diversity (North Carolina plaintiffs and a North Carolina defendant).    In the alternative, these defendants move to dismiss on the grounds of *forum non conveniens* because there is little if any reason to respect plaintiffs' choice of forum, and there are compelling reasons to decline to exercise jurisdiction in favor of an Australian forum.    These arguments are explored below and in the accompanying declarations.[1]

## FACTS

### A.    The Program Criticizes the Media's Use of Jack Idema

On March 7, 2005, the ABC's television series *Media Watch* aired a program titled "Jack of All Trades" (the "Program") which reported on the media's reliance upon plaintiff Jack Idema, a former member of the U.S. Army Special Forces, as a sometime source and expert for television reporters on terrorism and the war in Afghanistan.    At the time the Program was broadcast, Idema was serving a ten-year prison term in Afghanistan, having been convicted by the Afghan government of running a freelance private prison in central Kabul where he illegally arrested and tortured suspected terrorists.    Davis Aff't ¶ 7; Comp. ¶¶ 51, 53.    The Program noted Idema's arrest and questioned Idema's experience and expertise, reporting that, contrary to his claim to have spent 20 years as a Green Beret on secret missions around the world, he had served a three-year stint in active service some thirty years ago and was refused permission to re-enlist.    The Program also noted that Idema had a "remarkable talent for glorifying and financing his exploits through the media" and had convinced various international media outlets that he was a credible media expert on terrorism.    Davis Aff't, Ex. J.    According to plaintiffs, the Program  falsely, knowingly, and with

---

[1]    Declaration of Robert Simpson dated May 21, 2008 ("Simpson Decl."); Declaration of Liz Jackson dated May 20, 2008 ("Jackson Decl."); Declaration of Eric Campbell dated May 20, 2008 ("Campbell Decl."); Declaration of John Sheahan dated May 21, 2008 ("Sheahan Decl.").    Defendant Jackson has accepted service through counsel, and is also moving to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

defamatory intent, painted Idema as a self-promoting media hound who fabricated expertise and background for the purpose of gaining media attention and licensing revenue. Comp. ¶¶ 25, 56. They plead that the Program also broadcast copyrighted materials Idema owns without his permission and without paying him, namely, three photos of suspected terrorists captured and interrogated in Idema's private prison (the "Torture Photos").[2]

Plaintiffs claim that Idema led a "counter terrorist team, known as Task Force Saber, then Task Force 7, and later TF Saber 7" which worked closely with U.S. and Afghan military and intelligence activities". *Id.* ¶ 49. He began making a name for himself when he started peddling the Terrorist Training Tapes that he allegedly acquired in December 2001, and which he says depict an Al Qaeda training camp in Afghanistan. *Id.* ¶ 46. ABC reporter Eric Campbell met Idema in Afghanistan, and, according to Campbell, assisted him in creating a compilation tape, so that Idema could, for the first time, license these Tapes. Campbell Decl. ¶ 20. In exchange, Idema granted Campbell the exclusive world-premiere right to air the Terrorist Training Tapes on the ABC, as well as the right to use the footage in perpetuity for broadcast within Australia. *Id.* ¶ 21. Idema obtained a licensing agent (allegedly Polaris Images), and licensed the Tapes to various news agencies, allegedly generating substantial licensing fees that plaintiffs claim they donated to charities (*id.* ¶ 46). Idema apparently also asked Polaris Images to market the Torture Photos. *Id.* ¶ 30.

**B.    Plaintiffs Allege an International Conspiracy to Defame and Unlawfully Imprison Idema**

Plaintiffs allege that Idema's conviction was just one step in an international conspiracy to defame and destroy him, in which the ABC, an Australian government-sponsored media

---

[2]    The complaint alleges that Idema registered the U.S. Copyright in: "TF-180 Turnover to Bagram MPs" which, according to the Complaint, shows Idema's team transferring custody of a high-ranking terrorist; "Task Force Saber 7 Interrogation Photo – May 2004" which allegedly shows the interrogation of a high-ranking al-Qaeda linked Taliban terrorist; and "Task Force Saber 7 With EPW Monk," which allegedly shows a high-ranking al-Qaida linked terrorist undergoing medical treatment. Comp. ¶ 35.

broadcaster, was a member. *Id.* ¶¶ 5, 44. In sweeping terms, they claim that the ABC, together with individuals and humanitarian aid organizations around the world, "engaged in a carefully planned and orchestrated conspiratorial enterprise designed to defame Plaintiffs, cause Idema to remain illegally imprisoned in Afghanistan, sway public support by publishing a fictional narrative of events that would cause him to be abandoned by business associates, friends, and relatives, and destroy him financially". *Id.* ¶ 3. The conspirators – including, allegedly, the ABC – somehow possessed information "directly refuting the charges against Idema in the Afghan Taliban controlled court" (*id.* ¶ 53), although, plainly, the ABC's news story was researched and broadcast in March 2005, one year *after* Idema had been convicted. Although silent as to *why* defendants had any motive to engage in such nefarious scheme, plaintiffs are apparently certain as to its purpose: "Plaintiffs' financial destruction" and keeping Idema in prison. *Id.* ¶¶ 4, 75.

Defendant Campbell, the ABC reporter criticized in the Program for his reliance on Idema, is also alleged to be part of this conspiracy. When he met Idema in 2002 and spent five weeks with him traveling through Afghanistan, he believed that Idema was a counter-terrorism expert. Campbell Decl. ¶ 26. Campbell then wrote a book, *Absurdistan*, about his personal experiences in Afghanistan, and the difficulties associated with traveling and reporting from there. *Id.* ¶ 27. *Absurdistan* was written largely in Australia (not at all in the U.S.), published by HarperCollins Australia in Australia, and is not readily available in the United States. *Id.* ¶ 33. Plaintiffs allege that this book, released in 2005, contains "defamatory and vicious attacks" and that by having it published, Campbell breached his promise to Idema not to use certain information that Idema had told him in confidence. Comp. ¶¶ 82-83.

## C.    Idema Has Initiated Lawsuits Against Many Other Media Entities and Many of the Source Defendants Before

Idema has sued many major U.S. news organizations, generally asserting claims relating to their use of material he has offered to supply them. He sued the Fox News Network after it ceased

consulting him as an expert on counter-terrorism, alleging that Fox had stolen and misused the Terrorist Training Tapes. Davis Aff't ¶ 13. He has sued *New York Magazine*, alleging many claims similar to those here. *Id.* ¶ 14. He has also sued the Associated Press, CBS News, the *Poughkeepsie Journal*, Gannett Newspapers, *Stuff, Columbia Journalism Review* and *Maxim. Id.* ¶ 15. In some of these actions, Idema sued many of the same defendants named in this action, accusing them of conspiring with the media to defame him and deprive him of his livelihood. *Id.* ¶ 18. His lawsuit against the Fox News Network named Joseph A. Cafasso, Edward A. Artis, Knightbridge International Humanitarian Relief and Human Improvement Programs, Inc., Robert C. Morris and Partners International Foundation, five of the Source Defendants here, accusing them of spreading many of the same allegedly false rumors he alleges they have spread here. *Id.* ¶ 19. His complaint against *New York Magazine* also named two of the Source Defendants here: Joseph Cafasso and Edward Artis. *Id.* ¶ 20.

Idema has declared different places of residence in different lawsuits. In recent cases, he has provided addresses in Fayetteville, North Carolina; Dulles, Virginia; various locations in Afghanistan; and Poughkeepsie, New York. *Id.* ¶¶ 10-11. He now appears to be living and working in Afghanistan. Only weeks *after* he filed this action alleging that he resides in New York (Comp. ¶ 8), Idema submitted a letter to a court in North Carolina on professional letterhead[3] providing a P.O. box for him in North Carolina, telephone numbers for him in Afghanistan and North Carolina, and no indication at all of any connection to New York. Davis Aff't ¶ 8.

**D.    Plaintiffs' Claims in this Action**

On March 28, 2008, plaintiffs served the ABC; counsel has accepted service for defendant Jackson; none of the other defendants has been served. The complaint pleads three claims for relief solely against the ABC Defendants: copyright infringement (Count 1) based on the alleged

---

[3]    The professional letterhead indicates in Arabic and English that Mr. Idema's profession is now law and he is admitted to practice before several Afghan courts. *Id.* ¶ 8, Ex. D.

unauthorized use of the Torture Photos, and breach of contract (Counts 3 and 12). The following claims are pleaded only against Campbell: negligent misrepresentation (Counts 11 and 14) and breach of confidentiality (Count 13). Plaintiffs also assert numerous claims against both the ABC Defendants and the Source Defendants: contributory copyright infringement (Count 2); tortious interference with prospective economic advantage (Count 4); tortious interference with contractual relations (Count 5), civil conspiracy, (Count 6); unfair and deceptive trade practices under North Carolina law (Count 8); defamation (Count 9); and conversion (Count 10). Finally, they assert a fraud claim (Count 7) against Source Defendant Edward Artis.

**E.     The ABC is a Foreign Entity with Little Contact in the United States**

Leaving aside for now the consummate lack of legal merit in plaintiffs' claims under the applicable law, this action should not be before this Court. Stripped of dramatic hyperbole, this dispute essentially involves the publication of allegedly infringing and defamatory content by an Australian broadcaster in Australia. It has little to no contact with this United States forum.

The ABC is a not-for-profit media corporation existing under Australian law with its principal place of business in Sydney, New South Wales, Australia. Simpson Decl. ¶¶ 6, 11. It is Australia's national broadcaster, funded largely by the Australian government, and in the business of producing and disseminating media programs throughout metropolitan and regional Australia "free to air" on television, radio, and the Internet. *Id.* ¶¶ 7-11. As an Australian broadcaster targeting the Australian population, the ABC does not actively advertise or promote its programs in the United States. *Id.* ¶ 13. It maintains a small convenience office with one employee in New York and a news bureau in Washington D.C., so that its reporters can obtain news and transmit it back to the ABC for news programming. *Id.* ¶ 12.

*Media Watch* is a current affairs series focusing on media analysis and commentary, with stories involving conflicts of interest, gullibility, abuse of power, and fraud by members of the

media, such as reporters, editors, producers, and other media personalities. *Id.* ¶¶ 14-15. It is produced and broadcast only in Australia, and targets an Australian audience. *Id.* ¶ 17. The *only* availability of any *Media Watch* content in the United States is through the ABC website. There is no advertising or marketing targeted or directed at the United States or New York on the website, which is hosted on a server located in Sydney. *Id.* ¶¶ 18-19.

The Program was written, filmed and produced at the ABC's studio in Sydney; thus, the vast majority of relevant witnesses are Australian citizens and residents. *Id.* ¶¶ 31-32. All documents, source materials, original footage, video out-takes, drafts of the script, research files, and other production documents and records are located at ABC's Sydney headquarters. *Id.* ¶ 31. Also, all of the relevant information – both documentary and testamentary – regarding the ABC's vetting practices, standards and procedures employed to check programs for accuracy, specific knowledge with regard to Idema and/or the Torture Photos and Terrorist Training Tapes, are located in Australia. *Id.* ¶ 35.

## ARGUMENT

## I. THIS COURT LACKS SUBJECT MATTER JURISDICTION

### A.    No Predicate Act of Infringement Occurred in The United States

Plaintiffs assert that this Court has subject matter jurisdiction because of their copyright claims,[4] and supplemental jurisdiction over their remaining state law claims. Comp. ¶ 1. These boilerplate jurisdictional averments are belied by the complaint itself: there can be no viable copyright claim here because no predicate act of infringement occurred within the United States.

It is an "'undisputed axiom' that the United States' copyright laws have no application to extraterritorial infringement[.]" *Subafilms, Ltd. v. MGM-Pathe Comm. Co.*, 24 F.3d 1088, 1095 (9th C ir. 1994); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). An exception to

---

[4]    The copyright claims (Counts 1 and 2) are pleaded by all three plaintiffs, but the registrations identified are held by Idema personally, so only he can be a plaintiff on these claims.

the Copyright Act's bar on extra-territorial application exists where the defendant commits "a *predicate* act of infringement *within the United States*". *Update Art,* 843 F.2d at 73 (emphasis added); *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd.*, No. 02 Civ. 1151 (CVM), 2003 WL 42001, at *5 (S.D.N.Y. 2003) (claim under United States law may arise for acts of infringement committed abroad "where those acts are permitted or *initiated* by predicate acts of infringement within the United States") (emphasis added) (quoting *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 634 (S.D.N.Y. 2000) (finding no U.S. infringement where the "unfolding story of infringement begins abroad"); *De Bardossy v. Puski*, 763 F. Supp. 1239, 1243 (S.D.N.Y. 1991) (no domestic predicate act; "infringement" requires showing "that an infringing act occurred in the United States").

Plaintiffs' copyright claims here are premised on the allegedly unauthorized use of the three Torture Photos in the Program and on the ABC website. Comp. ¶¶ 35, 86-88. This case therefore falls squarely outside the exception recognized in *Subafilms* and in *Update Art.* The broadcast of the Program with the Torture Photographs occurred entirely within Australia. Simpson Decl. ¶¶ 17, 27. The upload of the Torture Photos onto the ABC's website server likewise occurred entirely in Australia. *Id.* ¶ 22. Only after the Photos were uploaded in Australia could any further viewing allegedly take place elsewhere in the world, including the United States. Accordingly, since there was no predicate act within the United States, *a fortiori* there has been no act of "infringement" under the U.S. Copyright Act.

**B.**    **Domestic Accessibility Does Not Create A Predicate Act under the Copyright Act**

Plaintiffs allege that the infringing content was "republished on internet sites around the world" (Comp. ¶¶ 4, 34), but even if such speculation as to copying sufficed (which it does not), the availability of material for downloading by someone in this country is not sufficient to create a U.S. copyright claim. First of all, downloading occurs *after* the Photos are uploaded to the site so

downloading is in no sense "predicate". As a leading commentator has concluded: "[p]lacing an unauthorized copy of a work on a website outside the US cannot give rise to liability in the US even if an infringing copy is made in the US by downloading from that foreign website". Patry, CHOICE OF LAW AND INTERNATIONAL COPYRIGHT, 48 AM. J. COMP. L. 383 (2000). Both logic and policy concerns dictate this outcome. That the ABC's website may be accessible to US users cannot be a basis for asserting subject matter jurisdiction over an otherwise foreign act of infringement, else allegations of unauthorized uploading would subject websites to suit in every country with Internet access. Absent any other acts within the United States, an assertion of jurisdiction here "would be contrary to the spirit of the Berne Convention, and might offend other member nations by effectively displacing their law in circumstances in which previously it was assumed to govern". *Subafilms,* 24 F.3d at 1088.

There are two cases in which a specific allegation of downloading content in the United States was deemed sufficient to constitute a domestic act of infringement, but there is no such allegation in this case. More to the point, neither case considered whether the predicate act of infringement occurred here, weighed the novel jurisdictional issues posed, or addressed the substantial policy implications flowing from extraterritorial application of the copyright law to a website accessible worldwide.[5] To extrapolate from these two cases a general principle that the mere accessibility of a foreign website in the U.S. can constitute a predicate act of infringement under United States copyright law would open the floodgates to claims by copyright owners arising

---

[5]    In *United Features Syndicate, Inc. v. Miller Features Syndicate, Inc.,* 216 F. Supp.2d 198, 225 (S.D.N.Y. 2002), the court inferred from an allegation that U.S. plaintiffs had discovered infringing material on defendants' website that infringement had occurred within the United States. *But see, New Name, Inc. v. Walt Disney Co.,* No. 07-cv-5034, 2007 WL 5061697, at *2 (C.D. Cal. Dec. 3, 2007) (finding no U.S. copyright infringement based on assertion that infringing products, produced and distributed abroad, must have "inevitably" occurred in United States). And in *Twentieth Century Fox Film Corp. v. IcraveTV,* No. Civ. A. 00-121,00-120, 2000 WL 255989, at *7 (W.D. Pa. Feb. 8, 2000), plaintiff submitted affidavits and declarations establishing that Pennsylvania residents had accessed the website and streamed U.S. copyrighted sports games and TV shows on the defendant's website, but that case is no longer good law since the Supreme Court decision in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913 (2005).

from web postings anywhere in the world.

The First Circuit has decided this issue in the analogous trademark context, finding that the mere availability of a website in the United States, without more (such as interactive features) was not an adequate basis for the assertion of subject matter jurisdiction over an otherwise foreign infringement:

> [Defendants'] website, although hosted from Japan and written in Japanese, happens to be reachable from the United States just as it is reachable from other countries. *That is the nature of the Internet*. The website is hosted and managed overseas; its visibility within the United States is more in the nature of an effect, which occurs only when someone in the United States decides to visit the website. To hold that any website in a foreign language, wherever hosted, is automatically reachable under the Lanham Act so long as it is visible in the United States would be senseless.

*McBee v. Delica Co., Ltd.*, 417 F.3d 107, 123 (1st Cir. 2005) (emphasis added).

The First Circuit relied on established authority that the mere availability of a website is not sufficient to confer personal jurisdiction over a foreign defendant, finding that "the extraterritorial application of jurisdiction under the Lanham Act evokes concerns about territorial restraints on sovereigns that are similar to concerns driving personal jurisdiction". *Id.* at 124. The Court found that "the mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible; . . . given the omnipresence of Internet websites today, allowing personal jurisdiction to be premised on such a contact alone would 'eviscerate' the limits on a state's jurisdiction over out-of-state or foreign defendants".[6] The same

---

[6]   It is well established in this Circuit that the mere availability of a website is not sufficient to establish personal jurisdiction over a foreign website operator. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 253 (2d Cir. 2007) (where defamation claim was based on website operated in Iowa, no jurisdiction under CPLR § 302(a) because statements were not "purposefully directed to New Yorkers rather than a nationwide audience"); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) ("Blue Note" website owned and operated out of Missouri did not confer jurisdiction under § 302(a)(2), which requires physical presence of the defendant in New York when tort committed); *Realuyo v. Villa Abrille*, 01 Civ. 10158 (JGK), 2003 WL 21537754, at *6 (S.D.N.Y. July 8, 2003) (no jurisdiction under CPLR § 302(a)(1) where defamatory article by Philippine newspaper was posted on website where users "in New York or throughout the world could view and download").

policy concerns underlie the extraterritorial limitations of the Copyright Act (more stringent than those under the Lanham Act), which serve to exclude foreign acts of infringement alleged to have occurred on a passive, non-interactive website, such as the website here.

### C.    There Is No Secondary Liability For Merely Allowing Allegedly Infringing Content to Be Viewed in the United States

Nor can plaintiffs' claim for contributory copyright infringement provide a basis for subject matter jurisdiction.   The ABC cannot be held secondarily liable for hypothetical (unalleged) downloading by U.S. visitors to its website.  Liability for infringement by third parties can attach only if a defendant contributed to the infringement or can be held vicariously liable for it.  "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it".  *Grokster,* 545 U.S. at 930 [internal citations omitted].  Further, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 936-937. Inducement requires affirmative steps such as "advertisement[s] or solicitation[s] that broadcast [ ] a message designed to stimulate others to commit violations".  *Id.* at 937; *see also Newborn v. Yahoo!, Inc.,* 391 F. Supp. 2d 181, 185-86 (D.D.C. 2005) (dismissing contributory liability claim because of insufficient allegations).

Here, the ABC does not advertise or derive any income from the display of the Torture Photos on the website; it does not encourage, solicit or instruct anyone to download the pictures.  At most, it has "mere knowledge of infringing potential" and, as the Supreme Court expressly held in *Grokster,* this alone "would not be enough here to subject a distributor to liability".  *Id.* at 937. Because there is neither allegation nor evidence that the ABC profited from any domestic third-party's use (if any) of the Torture Photos or engaged in any "purposeful, culpable expression and conduct" (*id.*) encouraging infringement of copyrights in the Torture Photos, the ABC cannot be

held secondarily liable for any downloading that theoretically could occur in the U.S.

\*     \*     \*

The copyright claims are the only federal claims alleged. There is no diversity jurisdiction under § 1332(a)(3), as that requires complete diversity, meaning that each plaintiff must be diverse from each defendant. *See Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 829 (1989). Contrary to ¶ 2 of the complaint, there is no complete diversity here because plaintiff corporations are alleged to be North Carolina corporations (¶ 7) and defendant William John Hagler is also alleged to be a North Carolina resident (¶ 21).[7] Thus, this Court has no subject matter jurisdiction.

## II. THE COURT SHOULD DISMISS THE COMPLAINT UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

This Court has broad "discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish ... oppressiveness and vexation to a defendant out of all proportion to plaintiffs' convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems". *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,* __ U.S. __, 127 S.Ct. 1184, 1190 (2007) (internal quotations marks and citations omitted).

In deciding whether to grant such a motion, courts consider three factors – the existence of an adequate alternative forum, the level of deference to accord plaintiff's choice of forum, and the public and private interests that determine which forum will be most convenient and will best serve the ends of justice. *USHA (India), Ltd. v. Honeywell Intern., Inc.,* 421 F.3d 129, 134 (2d Cir. 2005). Here, based on allegations of the complaint and incontrovertible facts, all three factors point

---

[7]   Although "Rule 21 permits district courts to drop a dispensable nondiverse party" (*Newman-Green,* 490 U.S. at 830), this jurisdictional defect cannot be cured merely by dismissing defendant Hagler, as it appears that, notwithstanding plaintiffs' allegation that Idema is "residing in New York" (Comp. ¶ 8), he appears to be a United States citizen without a particular domicile in the United States. Davis Aff't ¶ 8. A United States citizen with no domicile in any state of this country is "stateless" and cannot satisfy the complete diversity requirement. *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 68 (2d Cir. 1990).

decisively to Australia.

**A.    Australia Is An Adequate Alternative Forum**

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute". *Yung v. Lee*, Nos. 04-3139-CV, 04-3320-CV, 160 Fed. Appx. 37, 41, 2005 WL 3453820, at *2 (2d Cir. Dec. 15, 2005) (citations omitted); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). Only in "rare circumstances" is the remedy offered by an alternative forum "so clearly inadequate or unsatisfactory that it is no remedy at all". *Id.* Australia has been deemed an adequate forum for purposes of *forum non conveniens* by many United States courts.[8] As detailed in the Sheahan Decl., both the federal and state courts of Australia would provide more than adequate fora for plaintiffs' claims. Australian law recognizes all the claims for relief plaintiffs assert, or their equivalents. Sheahan Decl. ¶¶ 11-37. Australian courts would apply Australian or U.S. (or Afghani) law to those claims, following choice-of-law rules similar to those employed by courts here. *Id.* ¶ 15. And the procedures followed by Australian courts in civil cases would clearly afford plaintiffs due process of law. *Id.* ¶¶ 54-64.

In this case, Australia may be the *only* adequate forum, as Jackson and Campbell are only subject to jurisdiction and amenable to suit there, and that is where the Program was produced and broadcast, the script and photos were uploaded to the ABC Website, and the majority of relevant witnesses and documents are.

Plaintiffs have also named seven other "Source Defendants" – Joseph A. Cafasso (resident of Carteret, New Jersey, Comp. ¶ 15); Edward A. Artis (resident of the Philippines, *id.* ¶ 16);

---

[8]    *E.g., Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 160 (5th Cir. 1992) ("[t]he adequacy of Australia as an alternative forum is undisputed"); *Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662, 679 (C.D. Cal. 1993) (dismissing copyright action in favor of alternative Australian forum); *Interpane Coatings, Inc. v. Australia and New Zealand Banking Grp., Ltd.*, 732 F. Supp. 909, 915 (N.D. Ill. 1990) (finding that Australia is adequate alternative forum notwithstanding certain administrative requirements for filing suit).

Knightsbridge International, Inc. (California 501(c)(3) non-profit corporation, *id.* ¶ 17); Knightsbridge International Humanitarian Relief and Human Improvement Programs, Inc. (an affiliated entity, *id.* ¶ 18); Robert C. Morris, Jr. (resident of Connecticut, *id.* ¶ 19); Partners International Foundation (non-profit organization located in Connecticut, *id.* ¶ 20); and William John Hagler (resident of North Carolina, *id.* ¶ 21) -- who allegedly conspired with the ABC Defendants in committing various torts.  These Source Defendants are apparently likewise subject to jurisdiction in Australia as Australian courts assert long-arm jurisdiction over foreign defendants for torts committed in the forum or damages suffered in the forum caused by tortious acts wherever they occurred, and service of process can be effected in foreign countries under Australian law and treaties.  Sheahan Decl. ¶¶ 47-49.  The torts plaintiffs allege against the Source Defendants would all have taken place and/or caused some harm in Australia.  If plaintiffs' claims have any merit whatever, all defendants named in this case can be sued in Australia.

Even if any of the Source Defendants were *not* amenable to suit in Australia, this would not prevent dismissal because *none of them has been served in this action* so they are not parties at present.  And even if any are served, they do not have sufficient connections either to this forum or to the claims asserted against the ABC Defendants, to warrant keeping all the claims together here. Boilerplate allegations of conspiracy aside (Comp. ¶¶ 15, 16, 19, 29), the only alleged link between the two groups of defendants is that one group was a source of either information or material used by the other group in the Program.  Such general conspiracy allegations are insufficient as a matter of law.  *See Bell Atlantic Corp. v. Twombly,* __ U.S.__, 127 S. Ct. 1955, 1965 (2007) (naked assertion of conspiracy is insufficient; plaintiff must assert "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" and allegations must plausibly suggest a conspiracy).

Nary a one of these defendants is a citizen or resident of the State of New York, or is even

alleged to have furnished information or materials to the ABC *from* New York, not to speak of furnishing it to the ABC *in* New York.   Indeed, it appears the Source Defendants have been included solely to create the impression of some connection between the ABC Defendants and the United States.  For example, the only specific allegation in the complaint against three of the named defendants (Knightsbridge International, Inc.; Knightsbridge International Humanitarian Relief and Human Improvement Programs, Inc.; and Partners International Foundation), is the attribution of a quotation to "officials" of "Knightsbridge and Partners International".   Comp. ¶ 79.   By analogy, courts wary of plaintiffs manipulating jurisdiction by joining "a resident defendant having no real connection with the controversy", will exclude "sham defendants" when they are collusively joined for purposes of defeating jurisdiction.  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (finding fraudulent joinder, notwithstanding general conspiracy allegations, because complaint failed to allege conspiracy claim for relief against non-diverse defendant); *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (finding fraudulent joinder; conspiracy allegations against in-state defendants were "entirely general" assertion of "agreement among *all* of the Defendants," and focus of lawsuit was against out-of-state defendants).

In any event, there are compelling reasons to depart from the general rule that a forum is not adequate unless all defendants are subject to jurisdiction there (*PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998)), in favor of the "flexibility" this Court recognized in *Yung v. Lee*, 00 Civ. 3965 (DAB), 2002 WL 31008970 at *3 (S.D.N.Y. 2002) (Batts, J.) (granting defendants' *forum non conveniens* motion even though one defendant had refused to consent to jurisdiction in the alternative Hong Kong forum, because the claims against that defendant lacked merit, and "given the

paucity of allegations connecting said Defendant to the alleged fraud...").[9]    Plaintiffs could easily pursue their sundry claims against the Source Defendants in a separate action, indeed, Idema has. He has sued most of the same "Source Defendants" for disseminating allegedly infringing and defamatory information, *albeit* with respect to other programs or publications about Idema and his exploits. Davis Aff't ¶¶ 18-20. Similar claims against five of these defendants were dismissed in the case of *Idema v. Fox News Network LLC,* No. BC 296228 (Cal. Super. L.A. Co. 2005); *id.,* Ex. I.  Accordingly, the existence of hypothetical Source Defendants who have not even been served should not defeat ABC's motion to dismiss for *forum non conveniens.*

**B.      Idema's Choice of Forum Is Not Entitled to Particular Deference**

While ordinarily "courts should give deference to a plaintiff's choice of forum", "this deference is not dispositive and . . . may be overcome" (*Iragorri v. United Tech. Corp.,* 274 F.3d 65, 70, 71 (2d Cir. 2001) (*en banc*)), and a "U.S. citizen's forum choice should not be given dispositive weight" (*Piper,* 454 U.S. at 256 n.23).  When plaintiff's choice is not plaintiff's home forum, any weight given to that choice "applies with less force" (*Sinochem,* 127 S.Ct. at 1191), and as noted above, the evidence strongly suggests that Idema is not residing in the United States at all and that, wherever he resides, it is not New York.  The weight afforded plaintiffs' choice of forum is further diminished where, as here, "the plaintiff has actively sought international business and the cause of action does not have significant ties to the plaintiff's home forum". *Carey v. Bayerische Hypo-Und Vereinsbank AG,* 370 F.3d 234, 237 (2d Cir. 2004) (quotation marks omitted); *Alcoa S. S. Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 156 (2d Cir. 1980) (*en banc*) ("In an era of increasing international commerce, parties who choose to engage in international transactions

---

[9]    *See also USHA,* 421 F.3d at 135 (courts may conditionally dismiss the action to serve the "best serve the ends of justice"); *Scottish Air Intern., Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1234 (2d Cir. 1996) ("*Forum non conveniens* is a doctrine that necessarily requires great flexibility") (quoting *Piper Aircraft,* 454 U.S. at 249); *Odyssey Re (Londong) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F. Supp.2d 282, 291 (S.D.N.Y. 2002) (dismissing claims against one defendant, and dismissing on *forum non conveniens* grounds against remaining defendants).

should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum"). Idema is a self-designated international military expert, who claims to work closely with the U.S. and Afghan military, actively sought international business with numerous foreign media entities, and engaged a "professional worldwide photo agency" and "international licensing agency" to license his videos and photographs internationally. Comp. ¶¶ 30, 46, 49, 98.

Courts eschew a "rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens*" and have turned "'away from according a talismanic significance to the citizenship or residence of the parties'". *Iragorri*, 274 F.3d at 74 (quoting *Alcoa S.S. Co.*, 654 F.2d at 152, 154). Instead, there is a "*sliding scale* depending on several relevant considerations":

> the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons – such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, . . . or the inconvenience and expense to the defendant resulting from litigation in that forum – the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion . . . .

274 F.3d at 71 (emphasis added).

Where, as here, all pertinent factors point to Australia as the appropriate forum, and the *only* factor affording any connection to New York is that one of the three plaintiffs is alleged to "reside" here (Comp. ¶ 8),[10] their choice of forum is entitled to decidedly less deference. These factors include:

- The ABC is an Australian broadcast company (*id.* ¶ 9); Jackson and Campbell are also citizens of and resident in Australia (Comp. ¶ 12; Campbell Decl. ¶ 3);

---

[10]    Plaintiffs also allege that the ABC knew that it should have contracted with Idema's agent in New York for its use of the Torture Photos (Comp. ¶¶ 30, 46), but that allegation is wholly irrelevant because the ABC maintains that it used these Photos as part of a news story about Idema and what the Photos depict about him, so the only relevant question (apart from ownership and validity) will be whether that use was "fair dealing" under the governing Australian copyright law (analogous to U.S. fair use defense).

- The Program was produced, edited, and broadcast in Australia (Simpson Decl., ¶ 25);

- The Series is an Australian show directed at an Australian audience (*id.* ¶ 14);

- All research files and production documents for the Program are located in Australia. (*id.* ¶ 31);

- The majority of witnesses involved in the preparation of the Program, the operation of the ABC, and its business practices, are located in Australia (*id.* ¶ 31-35);

- Idema allegedly telephoned Jackson in Australia, while he was in Afghanistan, to complain about the Program (Comp. ¶ 27). Jackson disputes ever receiving this call (Jackson Decl. ¶ 21); assuming that she did, any records of it would be either in Australia or Afghanistan;

- The complaint alleges that the ABC has a practice of knowing applicable copyright law, and licensing such works from licensing agencies. Comp. ¶ 33. Any licensing records or witnesses knowledgeable about such practices would be located in Australia;

- Although the complaint asserts broadly that the ABC Defendants stood to profit immensely from the false reporting (Comp. ¶ 55), any supposed "profit" (and records to support it) would be reaped entirely in Australia;

- Campbell wrote the allegedly defamatory book in Australia, China, Russia and Spain; his interactions with Idema were in Afghanistan;[11] and all of his research notes are located in Australia, as is his publisher. Campbell Decl. ¶¶ 21, 29, 30; and

- The origin server for the Series website is located in Sydney and the content was uploaded there. Simpson Decl. ¶ 22. All documents concerning the functioning of the ABC website and witnesses responsible for it are located in Australia. *Id.* ¶ 32.

As Judge Kaplan noted in *First Union Nat'l Bank v. Paribas*, 135 F. Supp.2d 443, 448

---

[11] The only jurisdiction other than Australia with any contacts to this dispute is Afghanistan. Contacts with Afghanistan include:

o The Photos and Tapes were created or discovered in Afghanistan. Comp. ¶¶ 35, 46. Plaintiffs' other claimed "assets", the book *Hunt for Bin Laden* (authored by Robin Moore) and Idema's supposed reputation as a counter-terrorism expert, are based on Idema's expertise and experiences in Afghanistan. *Id.* ¶¶ 47, 56, 72-74.

o Plaintiffs assert that the ABC Defendants falsely stated that the training tapes were fabricated. *Id.* ¶ 70-72. To prove the truth or falsity of this statement, the parties would necessarily have to investigate and/or conduct discovery in Afghanistan.

o Campbell's alleged agreements with Idema concerning the Training Tapes and *Absurdistan* were made in Afghanistan. *Id.* ¶¶ 82, 93.

o The co-conspirator Source Defendants allegedly misrepresented Idema's reasons for going to Afghanistan and what he said and did while there. *Id.* ¶¶ 7, 67-69.

(S.D.N.Y. 2001), dismissing on *forum non conveniens* grounds a case involving a U.S. plaintiff suing foreign corporations over events occurring in England:

> [I]t simply stands to reason that the weaker the connection between a plaintiff's U.S. activities, even those of a U.S. plaintiff, and the events at issue in the lawsuit, the more likely it is that defendants attacking the plaintiff's choice of a U.S. forum will be able to marshal a successful challenge to that choice.

The tenuous connection between Idema's citizenship and the events at issue provides no reason to accede to his choice of forum. There are a host of reasons to dismiss in favor of Australia.

**C.    The Public and Private Factors Overwhelmingly Favor Australia As the Appropriate Forum**

Because none of the relevant contacts occurred in the United States, but rather are concentrated in Australia (or Afghanistan), all public and private factors weigh in favor of dismissal. *Piper Aircraft,* 454 U.S. at 249.

**1.    Private Interest Factors Strongly Favor Dismissal**

The first set of factors considered is the "private interest factors – the convenience of the litigants". *Iragorri*, 274 F.3d at 73. These include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of unwilling witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.

*Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)). When weighing these factors, courts have been instructed to "focus on the precise issues that are likely to be tried, taking into consideration the convenience of the parties and the evidence needed for the trial of these issues". *Iragorri*, 274 F.3d at 74.

Here, as detailed above, virtually all the operative facts took place abroad in Australia and Afghanistan. Courts in this Circuit have routinely granted motions to dismiss for *forum non*

*conveniens* where the relative access to proof favors the foreign forum.[12] Not surprisingly, save for Idema himself, practically all witnesses whose testimony will be required reside abroad or, at a minimum, outside of this jurisdiction. For example, key factual issues include, *inter alia*:

- whether the ABC undertook responsible reporting in researching and producing the Program (Comp. ¶ 38-44);

- whether the ABC Defendants had communications with various Source Defendants, located throughout the world, in order to enter into a conspiracy to defame and otherwise harm plaintiffs (*id.* ¶ 3-4);

- whether the audience of the allegedly defamatory Program – located solely in Australia where the Program was broadcast – viewed the Program as injuring plaintiffs' reputation (*id.* ¶ 122);

- whether the ABC Defendants knowingly infringed Idema's copyrights in the Torture Photos (*id.* ¶ 35-37);

- whether the ABC has a *modus operandi* of stealing photos and footage for use in its programs (*id.* ¶ 3);

- whether the ABC knew about plaintiffs' allegedly lucrative economic relationships with international news networks and acted in ways to disrupt them (*id.* ¶ 99);

- whether Idema entered into a contract, express or implied, with Campbell concerning *Absurdistan* and the Terrorist Training Tapes in Afghanistan (*id.* ¶ 82); and

- the operation of the Series' website and, consequently, the availability of the allegedly infringing and/or defamatory material over the Internet (*id.* ¶¶ 45, 122).

In these circumstances, the private factors weigh decidedly in favor of dismissing this case in favor of Australia. *See First Nat'l Bank,* 135 F. Supp. 2d at 448 (dismissing on *forum non conveniens* grounds where U.S. plaintiff sued various foreign defendants over their alleged involvement in a fraudulent scheme perpetrated in UK); *Iragorri,* 274 F.3d at 75 (inability of U.S. court to compel

---

[12]    *See, e.g., Aguinda v. Texaco, Inc.,* Nos. 01-7756L, 01-7758C, 2002 WL 1880105, at *7 (2d Cir. Aug. 16, 2002) dismissing on *forum non conveniens* grounds, noting that "[t]he relative ease of access to sources of proof favors proceeding in Ecuador"); *Blanco v. Banco Industrial de Venezuela,* 997 F.2d 974, 982 (2d Cir. 1993) (*same,* where "[v]irtually all the sources of proof [were] located in Venezuela"); *Moscovitz v. Magyar Cukor Rt.,* 00 Civ. 0031, 2001 WL 767004, at *5 (S.D.N.Y. July 9, 2001) (*same,* where "[a]lmost all of the evidence relevant to the dispute . . . [was] located in Hungary); *New Hampshire Ins. Co. v. Sphere Drake Ins. Ltd.,* 01 Civ 3226 (BSJ), 2002 WL 1586962, at *7 (S.D.N.Y. July 17, 2002) (*same,* suit by U.S. corporation "[a]s the negotiation, drafting and execution of the . . . contract took place almost entirely in England among English entities, the majority of evidence . . . will be found in England").

the live testimony of key witnesses is a compelling factor favoring dismissal).

### 2.    Public Interest Factors Strongly Favor Dismissal

Public interest factors include the interest of forums in having local disputes decided at home, their interest in having issues of law decided by courts of the nation whose law is involved, and court congestion. *Gulf Oil*, 330 U.S. at 508-09. All of these factors, too, point conclusively Australia.

The interest in having local disputes settled locally weighs overwhelmingly against a United States forum in this case. This dispute, as pleaded, concerns plaintiffs who thrust themselves into a foreign forum to conduct business and enter into agreements with foreign entities. More to the point, plaintiffs' international dealings were with Australia's primary national broadcaster, a longstanding Australian institution. Simpson Decl. ¶ 6. Since the ABC is publicly funded by the Australian government and operates under an Australian statute, that country has a profound interest in its conduct and output – far more so than the United States. *Id.* ¶ 10. The Series and the Program itself address the propriety of the actions of the Australian media. *Id* ¶ 15. This Court has previously held that a country's "interest . . . in having controversies relating to one of its major corporations decided at home is substantial". *De Young v. Beddone*, 707 F. Supp. 132, 139 (S.D.N.Y. 1989). And this interest is especially important here where the case "involves an allegation against a significant cultural institution". *See, e.g., Bybee v. Oper Der Standt Bonn*, 899 F. Supp. 1217, 1224 (S.D.N.Y. 1995) (dismissing action by New York resident on *forum non conveniens* grounds, noting that Germany had a "substantial interest" in the opera company defendant); *Allstate Life Ins. Co. v. Linter Group, Ltd.*, 994 F.2d 996, 1002 (2d Cir.), *cert. denied*, 510 U.S. 945 (1993) (Australia had greater interest in resolving fraud claims related to largest liquidation of Australian company); *Scottish Air Int'l*, 81 F.3d at 1233-4 (United Kingdom had greater interest in litigation involving inquiry into British corporation's internal affairs); *Linder Fund, Inc. v. Polly Peck Int'l PLC*, 811 F. Supp. 133,

136 (S.D.N.Y. 1992) (England had particular interest in resolving dispute concerning audit of a British entity by an accounting firm licensed in the U.K).

So, too, the need to apply Australian law argues in favor of dismissal. *See Piper*, 454 U.S. at 260 ("[many] *forum non conveniens* decisions have held that the need to apply foreign law favors dismissal"); *Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A.*, 712 F.2d 11, 14 (2d Cir. 1983) ("an action should be dismissed where the Court may be required to 'untangle problems in conflict of laws, and in law foreign to itself'"). Plaintiffs curiously allege that some of their claims for relief are governed by North Carolina and (occasionally) Afghani law. *See* Comp. ¶ 96 (breach of contract); ¶ 102 (tortious interference with business opportunities); ¶ 105 (tortious interference with contract); ¶ 110 (civil conspiracy); and ¶ 125 (defamation). Plaintiffs also allege that United States copyright law applies but, as addressed above, it does not: to the extent plaintiffs have alleged copyright claims, they must plead and prove those claims under Australian law. Under the governing choice of law principles, since the relevant contacts in this case point overwhelmingly to Australia, and since Australia has the greatest interest in having its law applied, all of plaintiffs' claims – regardless of plaintiffs' cursory designations and whether the claims are characterized as sounding in contract or tort – are governed by Australian law.

Under New York's choice of law principles,[13] an "interest analysis" is applied whereby "the law of the jurisdiction having the greatest interest in the litigation controls". *SAAB v. Citibank, N.A.*, No. 00 Civ. 6784 (BSJ), 2001 WL 1382577, at *6 (S.D.N.Y. Nov. 7, 2001). This analysis for contract-based claims looks to a number of factors, including: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile or place of business of the contracting parties". *Id.* Any

---

[13]   In determining which law to apply a court must look to the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-497 (1941).

alleged contracts between Idema and the ABC, by plaintiffs' own account, were initiated, negotiated and performed either in Australia or Afghanistan. Comp. ¶ 93. Contractual performance (where broadcast of the Terrorist Training Tapes was to take place and did take place) was in Australia only. On these facts, Australia is the country with by far the greatest interest in all the contract-based claims.

New York courts apply a similar "interest analysis" for claims sounding in tort (Counts Three to Fourteen),[14] looking to "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss". *SAAB*, 2001 WL 1382577 at *6. Here, as in *SAAB*, plaintiffs' tort-like claims – misappropriation, defamation, tortious interference, unfair competition, copyright infringement – all concern "conduct-regulating" laws. In copyright cases, the law of the country where the alleged infringement occurred governs the determination of whether an infringement has in fact occurred. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 91 (2d Cir. 1998) ("On [copyright] infringement issues, the governing conflicts principle is usually lex loci delicti"); *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir. 1996) ("the applicable law [must] be the copyright law of the country in which the infringement occurred"). And courts apply the law of the forum with the greatest "interest in regulating the conduct of its citizens by having its defamation rules apply when an allegedly defamatory publication is made". *Test Masters Educ. Serv., Inc. v. NYP Holdings, Inc.*, No. 06 CV 11407 (BSJ), 2007 WL 4820968, at *5 (S.D.N.Y. Sept. 18, 2007) (applying New York law even though plaintiff was domiciled in Texas because defamatory article emanated from New York via its publication by a New York publisher);

---

[14]    This does not include Count Six for Civil Conspiracy, but that is not a valid claim for relief. *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp.2d 496, 506 (S.D.N.Y. 2007) ("New York…does not recognize a substantive tort of civil conspiracy"); *Idema v. Wager*, 120 F. Supp.2d 361, 367 (S.D.N.Y. 2000), *aff'd*, 29 Fed. App'x 676 (2d Cir. 2002) (same).

*AroChem Intern., Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (applying California law where plaintiff's and defendant's domiciles were different and California, as "the place where the conduct at issue occurred", had the most contact).

Given the burden on this already heavily congested court (*see Gulf Oil*, 330 U.S. at 508-09; *Iragorri*, 274 F.3d at 74), "scarcity of judicial resources requires that this court in particular decline to exercise jurisdiction over those cases, like the present one, that clearly have a much stronger connection to another forum". *CCS Intern., Ltd. v. ECI Telesystems, Ltd.,* No. 97 Civ. 4646 (LAP), 1998 WL 512951 at *10 (S.D.N.Y. Aug. 18, 1998) (citation omitted).

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed without prejudice and the ABC Defendants should be awarded their costs.

Dated: New York, New York
      May 21, 2008

                    DAVIS WRIGHT TREMAINE LLP

                    By:    *Marcia B. Paul*

                      Marcia B. Paul (MP 8427)
                      Edward J. Davis (ED 1266)
                      Monica Pa (MP 3307)

                      1633 Broadway – 27th Floor
                      New York, New York 10019
                      Telephone:  (212) 489-8230
                      Fax:  (212) 489-8340

                      *Attorneys for Defendants*
                      *Australian Broadcasting Corp. and Liz Jackson*