UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------x
```

COUNTER TERRORIST GROUP US,
COUNTERR GROUP, and J. K. IDEMA,

                    Plaintiffs,

        - against -

AUSTRALIAN BROADCASTING CORP.;
a/k/a ABC AUSTRALIA; ABC
CORPORATIONS 1-100; LIZ JACKSON;
ERIC CAMPBELL; JOSEPH A CAFASSO;
EDWARD A. ARTIS; KNIGHTSBRIDGE
INTERNATIONAL, INC.; KNIGHTSBRIDGE
INTERNATIONAL HUMANITARIAN
RELIEF AND HUMAN IMPROVEMENT
PROGRAMS, INC.; ROBERT C. MORRIS;
PARTNERS INTERNATIONAL
FOUNDATION; WILLIAM JOHN HAGLER,
Both Individually and Severally, and DOES 1
through 7, inclusive,

                    Defendants.

```
--------------------------------------------------x
```

08 Civ 2356 (DAB)

**DECLARATION OF
JOHN CHARLES SHEAHAN**

JOHN CHARLES SHEAHAN declares, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a Senior Counsel and barrister at law. I was called to the bar of the state of Queensland in 1984, and was appointed Senior Counsel (equivalent to Queens Counsel in England) in 1997. I became a legal practitioner in New South Wales in 1999. My practice is focused on corporate, banking and competition law. I have also acted from time to time in defamation suits and advised in relation to copyright and breach of confidence issues. A copy of my *curriculum vitae* is attached hereto as Exhibit A for the Court's reference.

2.  Over the last five years or so I have advised and appeared for the Australian Broadcasting Corporation ("**the ABC**") on several occasions. I have no current retainer from the ABC, apart from their request to make this declaration. I am available to advise and appear for interests hostile to the ABC if asked.

1

3.    I have been asked to prepare this declaration by the defendant ABC. It has been sued along with two employees, Liz Jackson and Eric Campbell (collectively, 'the ABC defendants'). In particular, I have been asked to render an opinion regarding (1) the causes of action on which the plaintiffs might rely under Australian law and related choice of law rules for claims with a foreign element; (2) the Australian jurisdictions in which proceedings by the Plaintiffs can be brought; (3) the nature of Australia's long-arm jurisdiction over those Defendants who are not Australian residents; and (4) a brief outline of relevant civil procedure in Australia.

**Preliminary**

4.    Australia has a federal system of government similar in many respects to that of the United States of America. Both the federal and state parliaments enact legislation within their constitutional boundaries of competence (for simplicity, in this declaration I will not discuss the position of the territories, that is, jurisdictions ultimately subject to federal control which are not states). However the (judge made) common law and equitable rules are the same for all Australian jurisdictions. This follows from the position of the High Court of Australia as the ultimate appellate court for judgments of all kinds made by the Supreme courts of the states (*Lange v Australian Broadcasting Corporation* (1997) 189 CLR 520 at 563).

5.    As in the United States there is a system of federal and state courts. As I discuss further below, both federal and state courts may exercise federal and state jurisdiction in appropriate cases. The primary federal trial court is the Federal Court of Australia. It operates as a single national court and its judges sit in all capital cities and elsewhere if necessary. Appeals lie (generally, as of right) from single judges to a full court and then (by special leave) to the High Court of Australia. Judges of the federal courts are appointed to age 70, and their tenure and conditions are protected by s 72 of the Commonwealth Constitution.

6.    Each state has its own court system. For simplicity I will discuss in this declaration only the position in New South Wales, which is the most populous state and has the oldest established and largest court system. The leading trial court is the Supreme

Court of New South Wales. Appeals lie (generally, as of right) from judgments of that court in civil matters to the Court of Appeal and thence (by special leave) to the High Court of Australia. Judges are appointed to age 72 and their tenure is protected by ss 53 to 56 of the *Constitution Act 1902* (NSW), and indirectly, by implications derived from the Commonwealth Constitution (*Re Wakim; Ex parte McNally* (1999) 198 CLR 511).

**Causes of action and choice of law in Australia**

7.    I am instructed that the proceedings arise from an Australian television program produced and broadcast by the ABC in Australia in March 2005. I have been provided with a copy of the complaint. The Plaintiffs in the proceeding are an American citizen and two corporations incorporated in North Carolina. The Plaintiffs' complaint relates to a segment of one episode of a weekly television program, Media Watch, entitled *'Jack of All Trades'* ('**the Program**'), in which the ABC criticizes its own past reporting through its employee, Defendant Eric Campbell. Mr Campbell had relied on the expertise of and information provided by the Plaintiff Mr J.K. Idema in two stories about Afghanistan. I am instructed that Mr Idema claims copyright in three photographs used in the Program and claims ownership of but not copyright in video tapes which were also used in the Program. The ABC also maintains a website ('**the ABC website**') which includes a transcript of the Program and the three photographs.

8.    I am instructed that the complaint pleads three claims for relief solely against the ABC Defendants: copyright infringement (Count 1) and breach of contract (Counts 3 and 12). The following claims are pleaded only against Campbell: negligent misrepresentation (Counts 11 and 14) and breach of confidentiality (Count 13). The Plaintiffs also assert numerous claims against all the defendants including; contributory copyright infringement (Count 2); tortious interference with prospective economic advantage (Count 4); tortious interference with contractual relations (Count 5), civil conspiracy to defame and unlawfully imprison the Plaintiff Mr Idema (Count 6); unfair and deceptive trade practices under North Carolina law (Count 8); defamation (Count 9); and conversion (Count 10). Finally, they assert a fraud claim (Count 7) against the Defendant Edward Artis.

9.     In respect of the claim for breach of confidentiality against Defendant Eric Campbell, I am instructed that it arises from the publication of a book called *"Absurdistan"* written by the Defendant Eric Campbell and promises allegedly made by Campbell to the Plaintiff Mr Idema in Afghanistan. It is alleged that the Plaintiff Mr Idema entered into a contract, express or implied, with Defendant Eric Campbell concerning Absurdistan and the video tapes while in Afghanistan. *Absurdistan* was written largely in Australia, published by HarperCollins Australia in Australia, and is not readily available in the United States.

10.    The Plaintiffs also allege that *"Absurdistan"*, released in 2005, contains defamatory attacks on the Plaintiff Mr Idema.

*Copyright*

11.    Australian law recognises copyright. The *Copyright Act 1968* (Cth) provides the right to bring an action for damages and other relief for copyright infringement. By Part VIII of the *Copyright Act 1968* (Cth), and the *Copyright (International Protection) Regulations 1969* (Cth) Australia provides for the extension of copyright protection to foreign copyright works and the citizens of other countries as required by the *Universal Copyright Convention* (Geneva) and the *International Convention for the Protection of Literary and Artistic Works* (Berne). Regulation 4 of *Copyright (International Protection) Regulations 1969* (Cth) provides, in part:

> (1)    Subject to these Regulations, a provision of the Act that applies in relation to a literary, dramatic, musical or artistic work or edition first published, or a sound recording or cinematograph film made or first published, in Australia (an Australian work or subject-matter ) applies in relation to a literary, dramatic, musical or artistic work or edition first published, or a sound recording or cinematograph film made or first published, in a Berne Convention country, a Rome Convention country, a UCC country, a WCT country, a WPPT country or a WTO country (a foreign work or subject-matter ):
>
> > (a)    in the same way as the provision applies, under the Act, in relation to an Australian work or subject-matter; and
> >
> > (b)    as if the foreign work or subject-matter were made or first published in Australia.
>
> ...

4

(3)   Subject to these Regulations, a provision of the Act relating to a work or subject-matter other than a work that applies in relation to a person who, at a material time, is an Australian citizen applies in relation to a person who, at a material time, is a citizen or national of a Berne Convention country, a Rome Convention country, a UCC country, a WCT country, a WPPT country or a WTO country (a foreign citizen):

> (a)   in the same way as the provision applies, under the Act, in relation to an Australian citizen; and

> (b)   as if the foreign citizen were an Australian citizen.

12.   Only acts committed in Australia constitute copyright infringement under the *Copyright Act 1968* (Cth). Pursuant to section 101, copyright is infringed when a person who, not being the owner of the copyright, and without the licence of the owner of the copyright, does *in Australia,* or authorizes the doing in Australia of, any act comprised in the copyright. In the case of the photographs, these acts include reproducing the work in a material form, publishing the work, and communicating the work to the public (section 31(1)(b) *Copyright Act 1968* (Cth)). As noted above, foreign authors and works made in foreign jurisdictions are protected from copyright infringement insofar as they are breached by an act done in Australia.

13.   It follows that Australian courts will exercise jurisdiction to hear and determine the alleged copyright infringement by way of the television broadcast of the Program, and the publication of the photos on the internet, being an infringement of copyright *in Australia.* Australian courts would apply Australian law in adjudication of these claims.

14.   I do not understand the complaint to include a claim of copyright infringement occurring outside Australia.  If there were such a claim then whether the Federal Court or New South Wales Supreme Court should assume jurisdiction, and if so, what law could be applied, is not settled (see the discussion in Ricketson & Cresswell, The *Law of Intellectual Property: Copyright Design and Confidential Information,* vol 2, ch 16A).  My own opinion is that the Courts would be very likely to assume jurisdiction given that other equivalent copyright claims in the complaint would clearly be within jurisdiction.   If the infringement occurred abroad, the Court would likely adopt a choice of law rule that applied either the law of the place of

5

infringement (by analogy with torts), the law of the plaintiffs' domicile or nationality or place of residence, or the law of the place most closely connected with the whole matter (see Ricketson [16A.65] ff).

15.    Superior courts in Australia are regularly called upon to apply foreign law as a result of the application Australian choice of law rules.  Proof of foreign law in the Federal Court and New South Wales is facilitated by ss. 174 and 175 of the *Evidence Act* 1995 (Cth) and (NSW) which provide:

### 174 Evidence of foreign law

(1) Evidence of a statute, proclamation, treaty or act of state of a foreign country may be adduced in a proceeding by producing:

(a) a book or pamphlet, containing the statute, proclamation, treaty or act of state, that purports to have been printed by the government or official printer of the country or by the authority of the government or administration of the country, or

(b) a book or other publication, containing the statute, proclamation, treaty or act of state, that appears to the court to be a reliable source of information, or

(c) a book or pamphlet that is or would be used in the courts of the country to inform the courts about, or prove, the statute, proclamation, treaty or act of state, or

(d) a copy of the statute, proclamation, treaty or act of state that is proved to be an examined copy.

(2) A reference in this section to a statute of a foreign country includes a reference to a regulation or by-law of the country.

### 175 Evidence of law reports of foreign countries

(1) Evidence of the unwritten or common law of a foreign country may be adduced by producing a book containing reports of judgments of courts of the country if the book is or would be used in the courts of the country to inform the courts about the unwritten or common law of the country.

(2) Evidence of the interpretation of a statute of a foreign country may be adduced by producing a book containing reports of judgments of courts of the country if the book is or would be used in the courts of the country to inform the courts about the interpretation of the statute.

16.    Questions as to the effect of evidence of foreign law are for the judge not the jury (s. 176).

*Contract*

17.    Australian common law continues the English common law of contract, with some variations and statutory modifications.  As in many other areas of Australian domestic law, decisions of the courts of the United States of America and American works of legal reference are also influential (see e.g. *Renard Constructions (ME) Pty Ltd v Minister for Public Works* (1992) 26 NSWLR 234 at 264ff).

18.    The courts will apply the proper law of the contract to claims to enforce the contract. The court will first inquire as to whether, upon the construction of the contract and by the permissible means of construction, the court properly may infer that the parties intended their contract to be governed by reference to a particular system of law.  If that question is answered in the negative the court will apply the proper law of the contract, being the law that has the closest and most real connection with the contract (*Akai Pty Ltd v The People's Insurance Co Ltd* (1996) 188 CLR 418). *Confidentiality*

19.    Australian common law provides for causes of action for breach of express or implied contractual obligations of confidentiality and for a breach of equitable obligations of confidence (Ricketson, *supra*, chapters 25-27).

20.    In the case of a claim based on a contractual obligation of confidentiality, the choice of law rule for contract will apply.

*21.*    As regards equitable obligations of confidence, the generally accepted view is that, if a defendant is before the court, "the equities arise from a transaction to which he is a party as ascertained by New South Wales law and the equitable remedies provided by that law will be applied to him" *(Attorney-General (UK) v Heinemann Publishers Australia Pty Ltd* (1987) 75 ALR 353 at 455).  However in appropriate circumstances the court will apply the law of a different jurisdiction to determine an equitable claim (*ibid.*, at 456).

*Defamation*

22.     The laws of the states provide for actions for damages for defamation. Prior to 2006 each state and territory had separate regimes of defamation law. Each was broadly based on the (originally English) common law of libel and slander, with varying degrees of statutory modification. Australian law does not have an express constitutional guarantee of freedom of speech, though most political speech is protected by an implication deriving from the Commonwealth Constitution (*Lange v Australian Broadcasting Corporation* (1997) 189 CLR 520).

23.     The Australian choice of law rule for torts selects the *lex loci delicti,* the place where the wrong occurred, as the substantive law to be applied (*Regie National des Usines Renault SA v Zhang* (2002) 210 CLR 491). In *Zhang*, the High Court acknowledged that it will sometimes be "debatable as to where precisely the 'wrong' occurred".

24.     For the tort of defamation:

> [O]rdinarily, defamation is to be located at the place where the damage to reputation occurs. Ordinarily that will be where the material which is alleged to be defamatory is available in comprehensible form assuming, of course, that the person defamed has in that place a reputation which is thereby damaged.

*(Dow Jones & Co Inc v Gutnick* (2002) 210 CLR 575 at [44]).

*Conspiracy*

25.     Australian common law provides for the tort of conspiracy. Damages may be claimed for conspiracy where the predominant purpose of the conspirators is to injure the plaintiff (conspiracy to injure), or where the conspiracy is to use unlawful means and there is some intent to injure the plaintiff. Generally speaking, any civil or criminal wrong may be unlawful for this purpose. (See Balkin and Davis, *The Law of Torts,* 3rd ed, [21.42]ff).

26.     The choice of law rule for tort applies. However I am unaware of any binding authority as to how the place of the tort in this specific context should be determined. The court will likely resort to the underlying principle that "the right approach is... to look back over the series of events... and ask... where in substance did this cause of

action arise?" (*Voth v Manildra Flour Mills Pty Ltd* (1990) 171 CLR 538 at 567 quoting *Distillers Co (Biochemicals) Ltd v Thompson* [1971] AC 458 at 467–8).

*Fraud*

27.    Australian common law provides a cause of action for damages for the tort of deceit deriving from the line of authorities culminating in England in *Derry v Peek* (1889) 14 App Cas 337 (*Krakowski v Eurolynx Properties Ltd* (1995) 183 CLR 563).

28.    Again, the choice of law rule for tort applies.  In most cases the place of the tort will be the place to where the representation was directed, provided it could be reasonably be expected to be received by the plaintiff as a result of that communication (*Voth v Manildra Flour Mills Pty Ltd* (1990) 171 CLR 538).

*Misleading and unfair trade practices*

29.    Both Federal (*Trade Practices Act 1974* (Cth), ss 52, 82 and 87) and uniform state laws (eg, *Fair Trading Act* 1987 (NSW), ss 42, 68 and 72) provide wide ranging civil remedies for persons who suffer loss or damage by virtue of conduct in trade or commerce that is misleading or deceptive.

30.    Part V of *Trade Practices Act 1974* (Cth) (which includes s. 52) applies to conduct within Australia by any corporation, local or foreign, in trade or commerce and extends to conduct outside Australia by bodies corporate incorporated or carrying on business within Australia or by Australian citizens or persons ordinarily resident within Australia.   Consent of the Attorney-General is required before relief can be granted in relation to extra-territorial conduct (s 5(3) of the *Trade Practices Act*), however the effect of s 5(5) is that in most cases the consent must be granted.

*Interference with contract*

31.    Australian common law recognises the tort of intentional interference with contractual rights, as established in *Lumley v Gye* (1853) 2 El & Bl 216 (*Zhu v Treasurer of the State of New South Wales* (2004) 218 CLR 530).

32.    The choice of law rule for torts will apply.  In *Metall und Rohstoff AG v Donaldson Lufkin & Jenrette Inc* [1990] 1 QB 391 the English Court of Appeal held that the tort of inducing a breach of contract occurred in England where the actions in breach of

9

the contract were taken, and not in New York where the decision to procure the breach of contract was made. That approach is likely to be followed in Australia.

*Negligent misrepresentation*

33.    This tort is recognised in Australia (*L Shaddock & Associates Pty Ltd v Parramatta City Council (No1)* (1981) 150 CLR 225).

34.    The choice of law rules will be the same as for the tort of deceit. It follows that if, as may be the case here, the representations were directed to the plaintiffs in Afghanistan the law of Afghanistan will apply.

35.    It should be noted however that unless one of the parties relies on and proves the foreign law, Australian law will likely be applied (*Regie National des Usines Renault SA v Zhang* (2002) 210 CLR 491 at [69]-[71]).

*Conversion*

36.    There is a tort of conversion in Australian law. Conversion involves dealing with goods or chattels in a manner repugnant to the immediate right of possession of the person who has the property or the special property in them (*Penfolds Wines Pty Ltd v Elliott* (1946) 74 CLR 204 at 229).

*Accessorial liability*

37.    Under Australian law persons who direct or procure others to commit a tort or infringe copyright may be liable as accessories either under common law principles (*Performing Right Society Ltd v Ciryl Theatrical Syndicate Ltd* [1924] 1 KB 1) or in the case of copyright as persons who authorised the infringement (*Australian Performing Right Association Ltd v Metro on George Pty Ltd* (2004) 61 IPR 575, [2004] FCA 1123 and *Cooper v Universal Music Australia Pty Ltd* (2006) 71 IPR 1, [2006] FCAFC 187). Remedies under the *Trade Practices Act* and the *Fair Trading Acts* are also available against persons who knowingly participate in the defendant's contravention of the Act (see s. 75B of the *Trade Practices Act*).

**Jurisdiction in Australia**

*Ability to sue in Australia*

38.    The plaintiffs can bring proceedings in Australian courts even though the Plaintiffs are not Australian citizens or residents or Australian corporations.

*Jurisdiction – Overview*

39.    As noted above, Australia has a federal system in which there are both federal and state court systems. However by a variety of mechanisms a position has been reached in which domestic jurisdictional disputes are relatively rare.   The federal claims discussed above (breach of copyright and contravention of s 52 of the *Trade Practices Act*) may be brought in the courts of the states, and claims based on state law may be brought in the federal courts provided they are sufficiently connected with a claim which is made under federal law.

*Federal*

40.    The Federal Court of Australia is vested with original jurisdiction in any matter arising under any law of the Commonwealth Parliament (s 39B(1A)(c) *Judiciary Act 1903* (Cth)) other than a matter as to a criminal prosecution.   It therefore has jurisdiction in respect of any claim arising under the *Trade Practices Act* or the *Copyright Act.*

41.    The jurisdiction of a federal court, once enlivened by a claim arising under a law made by the parliament, is not "restricted to the determination of the federal claim or cause of action in the proceeding, but extend[s] beyond that to the litigious or justiciable controversy between parties of which the federal claim or cause of action forms part": *Re Wakim; Ex parte McNally* (1999) 198 CLR 511 at [135].  Moreover:

> There is but a single matter if different claims arise out of "common transactions and facts" or "a common substratum of facts", notwithstanding that the facts upon which the claims depend "do not wholly coincide". So, too, there is but one matter where different claims are so related that the determination of one is essential to the determination of the other as, for example, in the case of third party proceedings or where there are alternative claims for the same damage and the determination of one will either render the other otiose or necessitate its determination. (*Re Wakim; Ex parte McNally* at [140]).

11

42.    In the present case it would in my opinion be likely to be held that all the claims against the ABC Defendants were within the scope of the one justiciable controversy and so within federal jurisdiction.    The claims against other defendants would be likely to be treated as within "accrued" jurisdiction unless it were shown that they were distinct and separate from the claims against the ABC Defendants.

*State Jurisdiction*

43.    In New South Wales, the Supreme Court is a superior court of record and has "all jurisdiction which may be necessary for the administration of justice in New South Wales" (*Supreme Court Act 1970* (NSW) ss 22 and 23).

44.    Federal judicial power may be invested in State courts by the Commonwealth Parliament under s 77(iii) of the Commonwealth Constitution.  State courts have been invested with federal jurisdiction by the operation of subsection 39(2) of the *Judiciary Act* and subsections 76(ii) and 77(iii) of the Commonwealth Constitution.  State Courts may exercise federal jurisdiction unless a federal statute confers jurisdiction exclusively on the Federal Court. No such exclusivity applies in the case of the *Copyright Act* or the *Trade Practices Act*. Jurisdiction has been expressly conferred on the state Supreme courts in matters arising under Part V of the *Trade Practices Act* by s 86(2) of that Act.

45.    By virtue of corresponding laws in each state (entitled the *Jurisdiction of Courts (Cross-Vesting) Act 1987)* the New South Wales Supreme Court is, with irrelevant exceptions, invested with the jurisdiction in any civil matter arising under the laws of any other state.   It follows that common law claims can be brought in any state court irrespective of where the cause of action arose in Australia and which state law is applicable.

**Jurisdiction over the Defendants**

46.    The ABC Defendants are incorporated under the laws of Australia or are Australian citizens and accordingly could be sued in any Australian court by the Plaintiffs in connection for the causes of action set forth in the Summons.

47.    I am instructed that there are other Defendants in the proceedings who are not Australian citizens or corporations. The authority to adjudicate over foreign

12

defendants depends on relevant rules of court - the *Federal Court Rules* in the case of the Federal Court and in the case of New South Wales, *Uniform Civil Procedural Rules* (NSW).

*Grounds of jurisdiction over the foreign Defendants for these claims*

48.    Both the Federal Court and New South Wales rules make provision for service of originating process outside Australia in respect of all the claims (including the copyright claim), in circumstances where proceedings are properly commenced against the ABC Defendants and served in New South Wales and the foreign defendants are proper parties to the proceedings (FCR O 8 r 2, item 18; UCPR sch 6, item (i)). The foreign defendants will be "proper parties" if their joinder as parties would be permitted under the ordinary rules as to joinder of several parties in the one action. The rules in that respect are similar in the two courts, and are quite broad in their operation. The Federal rule (O 6 r 2) is as follows:

**Joinder of parties generally**

Two or more persons may be joined as applicants or respondents in any proceeding:

(a)    where:

(i)    if a separate proceeding were brought by or against each of them, as the case may be, some common question of law or of fact would arise in all the proceedings; and

(ii)    all rights to relief claimed in the proceeding (whether they are joint, several or alternative) are in respect of or arise out of the same transaction or series of transactions; or

(b)    where the Court gives leave so to do.

The result is that it is likely to be held that service out of the jurisdiction is appropriate unless the claims against the foreign defendants are separate from and not factually related to the claims against the ABC Defendants.

49.    In addition both the Federal Court and the Supreme Court permit service outside Australia in an action that is founded or based on a tort committed in the forum or in respect of damage suffered in the forum caused by a tortious act or omission wherever it occurred (FCR O 8 r 2, item 4 and 5; UCPR sch 6, items (d) and (e)). This would

encompass at the very least the defamation claims in these proceedings, and the claims for conspiracy. Since the rule permits service out of the jurisdiction if the claim "consists of or *includes*" any one or more of the items listed, a proceeding in the Federal Court based on the allegations in the existing complaint could be served out of the jurisdiction.

50.    In respect of the claims for breach of confidence and for breach of contract, I am instructed that these causes of action are only claimed against the ABC Defendants so that questions of long arm jurisdiction do not arise.

*Service - Federal*

51.    Service of originating process on a person in a foreign country is effective only if the Court has given leave before the application is served or confirms the service (O 8 r3(1)). The Court must be satisfied that the Court has jurisdiction in the proceeding, that the proceeding is of the kind mentioned in O 8 r 2 and that the party seeking leave has a prima facie case for relief sought by the party in the proceeding (O 8 r 3(2)).

52.    If the Plaintiffs are able to serve the Defendants outside Australia on a number of grounds of jurisdiction it is only necessary to show a prima facie case for the particular relief sought. It is not strictly necessary that the Plaintiffs show a prima facie case for each and every cause of action pleaded (*Cell Tech Communications Pty Ltd v Nokia Mobile Phones (UK) Ltd* (1995) 58 FCR 365).

*Service - State*

53.    No leave is required prior to service of originating process overseas. However, if originating process is so served and the defendant does not appear the plaintiff may not proceed against the defendant except by leave of the Supreme Court (UCPR 11.4). In exercising its discretion as to whether leave should be granted the Supreme Court will consider whether the plaintiff has an arguable case and whether Australia is an appropriate forum.

**Procedure**

54.    Procedure in civil cases in the Federal and NSW courts is broadly similar, though there are very many points of difference in matters of detail. I will discuss here only Federal procedure.

55.    The requirements of Chapter III of the Constitution regarding the exercise of federal judicial power have been held to give rise to an implied constitutional requirement of procedural due process in Australian federal courts and in state courts exercising federal judicial power (*Ebner v Official Trustee* (2001) 205 CLR 337; *Kable v R* (1996) 189 CLR 51). The essential features of judicial process include an open and public enquiry; an inquiry concerning the law and the facts relevant to the issues in dispute, followed by the determination of the relevant facts and law and the application of that law to those facts, with the object being final determination of the rights of the parties to the action; the parties being given an opportunity to present their evidence and to challenge the evidence led against them; and the application of the rules of natural justice (*Bass v Permanent Trustee* (1999) 198 CLR 334 at 359; *Chu Kheng Lim v Minister for Immigration* (1992) 176 CLR 1 at 67; *Polyukhovich v The Commonwealth (War Crimes Act Case)* (1991) 172 CLR 501 at 532; *Re Nolan; Ex parte Young* (1991) 172 CLR 460 at 496; *R v Trade Practices Tribunal: Ex parte Tasmanian Breweries Pty Ltd* (1970) 123 CLR 361 at 374). A Chapter III Court cannot be required or authorised to proceed in a matter that fails to ensure equality before the law, impartiality and the appearance of impartiality, the right of a party to meet the case made against him or her, or the independent determination of the matter in controversy by application of the law to facts determined in accordance with rules and procedures, or in any manner which involves an abuse of process or which would bring or tends to bring the administration of justice into disrepute (*Nicholas v The Queen* (1998) 72 ALJR 456 at 473-474).

56.    The *Federal Court Rules* provide for judicial case management generally. The Chief Justice has recently (5 May 2008) issued a practice note reaffirming that the "overarching purpose of individual case management within the docket system is the *just* resolution of disputes as *quickly, inexpensively* and *efficiently* as possible" (emphasis in original).

57.   By FCR O 1 r 8, the Court may dispense with compliance with any of the requirements of the Rules, reflecting the principle that justice is the paramount consideration (*State of Queensland v JL Holdings Pty Ltd* (1997) 189 CLR 146). Order 10 rule 1 makes plain that the court has a duty to give such directions with respect to the conduct of a proceeding as it thinks proper.

58.   The Federal Court manages cases through an individual docket system. As each originating application is filed it is allocated a particular judge who is responsible for the pre-trial management of the case and for conducting the trial. Under the *Federal Court Rules* the Court has extensive powers to issue directions to the parties concerning the conduct of the case.

*Discovery*

59.   Discovery in the Federal Court is subject to court direction, in keeping with the objective to contain delay, cost and unnecessary complexity. With the court's leave a party may request another party to give discovery of documents: O 15 r 1. Leave would certainly be granted in a case of the kind brought by these plaintiffs against these defendants. A party who is required to give discovery must carry out a reasonable search and serve a list of documents verified by affidavit: O 15 r 2. The court may limit the scope of discovery and prevent unnecessary discovery: O 15 r 3.

*Evidence*

60.   In the exercise of its jurisdiction the Federal Court is governed by the provisions of the *Evidence Act 1995* (Cth). The general pattern of a trial conforms to the traditional adversarial process. Evidence is adduced by each party in turn, witnesses must be available for cross-examination if required, rules of evidence apply based on the common law, with statutory modifications, and those rules include protection for client legal privilege. Evidence at trial is, unless the court otherwise orders, given orally in open court (Federal Court Rules O 33 r 1).

61.   Evidence may be given by overseas witnesses by video or audio link (Order 10 r 9). Where a witness is abroad, the Federal Court may order that a witness be examined in a foreign jurisdiction before a court, an officer of a court or an examiner, where that is in the interest of justice, pursuant to the *Foreign Evidence Act 1994* (Cth). In deciding

16

whether it is in the interests of justice to order that a witness be examined in a foreign jurisdiction the court will have regard to the overall justice of the circumstances, whether the witness is willing or able to attend the trial and the relevance of the evidence.

62.    The Federal Court does not normally order oral depositions, however the rules are broad enough to encompass oral depositions in appropriate cases.

*Trial Process*

63.    In the Federal Court a trial is by a judge alone, unless a judge orders a jury trial (s 39 *Federal Court of Australia Act 1976* (Cth).

*Timing*

64.    The time between commencement of a matter and trial is affected by the complexity of the matter, its intrinsic urgency, the state of the court's lists and the willingness of the parties to comply with, or enforce compliance with, the court's directions as to interlocutory steps.  As a guide however I attach as Exhibit B a schedule of statistics concerning the disposition of matters from the court's 2006-2007 Annual Report. The acronym "COA" refers to "causes of action". The full report is available at http://www.fedcourt.gov.au/aboutct/ar2006.html.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Sydney, New South Wales, Australia, this 21 ST day of May, 2008.

John Sheahan SC



# JOHN CHARLES SHEAHAN SC

## CURRICULUM VITAE

**Formal Matters**

- Graduated in Arts and Law (with honours) from the University of Queensland.

- Admitted to the Bar 18 December 1984.

- Appointed Senior Counsel 4 November 1997.

- Entitled to practice in all Australian jurisdictions, both state and federal.

**Principal Areas of Practice**

- Banking.

- Corporate law and insolvency.

- Trade practices and competition law.

**Appointments**

- Counsel Assisting the Special Commission of Inquiry conducted by DF Jackson AM, QC, into certain corporate restructures by James Hardie Industries.

- President (2005 to 2007), Board member (2001-date) Public Interest Law Clearing House, an organisation of law firms, barristers and corporate legal departments which organises pro bono legal projects and referrals.

- Member, NSW Bar Association Professional Conduct Committee (2001 to date).

- 2 -

- General Committee Member of the Banking and Financial Services Law Association (2001 to date), and member from time to time of its research prize and conference organising committees.

**Other Professional Associations**

- Associate member, 3/4 South Square, Grays Inn, London.

- Associate member, American Bar Association

- Member, Australian Society for Legal Philosophy

- Member, Forbes Society

- Member, Selden Society

- Associate member, Insolvency Practitioners Association of Australia

**Some Recent Decisions**

***Corporations Law / Insolvency***

- *Australian Pipeline Ltd v Alinta Ltd* (2007) 159 FCR 301 (Takeovers)

- *ENT Pty Ltd v Sunraysia Ltd* (2007) 61 ACSR 626 (Takeovers)

- *Re: Glowbind Pty Ltd; Takchi v Parberry* (2003) 48 ACSR 456.

- *Enron Australia Finance Pty Limited (In Liq) v TXU Electricity Limited and Yallourn Energy Pty Ltd* (2003) 48 ACSR 266.

- *Emanuel Management Pty Ltd  (In Liq) & Ors v Foster's Brewing Group Ltd & Ors* (2003) 178 FLR 1.

- *Re Pan Pharmaceuticals Ltd* (2003) 47 ACSR 139.

- *Selim v McGrath* (2003) 47 ACSR 537.

- *Re Macquarie Bank Ltd &  ASIC* (2001) 39 ACSR 508.

- *Elfic Ltd v Macks* (2001) 19 ACLC 1324, 181 ALR 1.

- *Global Television Pty Ltd v Sportsvision Australia Pty Ltd* (2000) 35 ACSR 484.

- *Cinema Plus Ltd v ANZ Banking Group Ltd* (2000) 35 ACSR 1.

- 3 -

### Banking and Finance

- *Gattellaro v Westpac Banking Corporation* (2004) 78 ALJR 394; [2004] HCA 6.

- *Notaras v St George Bank Ltd* (2005) 157 ACTR 1

- *Voss v Suncorp-Metway Ltd* [2004] 1 QdR 212.

- *Port of Brisbane Corporation v ANZ Securities Ltd* [2003] 2 QdR 661.

- *Bank of Valletta v National Crime Authority* (1999) 165 ALR 60.


### Trade Practices

- *Seven Network Ltd v Australian Competition and Consumer Commission* [2007] FCA 1929

- *Seven Network Ltd v News Ltd* (2007) ATPR 42-274, [2007] FCA 1062

- *Digi-Tech (Aust) Ltd v Brand* (2004) ATPR 46-248 (NSWCA).

- *Cantarella Bros Pty Ltd v Valcorp Fine Foods Pty Ltd* (2002) ATPR 41-856.

- *Mayne Nickless Ltd v Multigroup Distribution Services* (2002) ATPR 41-850.

- *Woolworths Ltd v Fels* (2002) 213 CLR 598.


### Some Papers and Publications

- *"Directors' Duties and Creditors"*, paper delivered at the Federal Court of Australia/Law Council of Austalia Corporations Law Seminar, March 2006 (with Leon Zwier)

- *"Where Several Guarantors are Intended but not all Sign"* (2003) 14 Journal of Banking and Finance Law and Practice 185.

- *"Partial Rescission"* (2001) 12 JBFLP 287.

- *"Doing Equity"*, University of New South Wales Continuing Legal Education seminar, 9 November 2001.

- "*Bank Overdrafts: Inferences & Implications*" (2001) 12 JBFLP 122.

- "*Use and Misuse of Legal History: Case Studies from the Law of Contract, Tort and Restitution*", (1998) 16 Australian Bar Review 280.

- 4 -

**Contact Details**

Level 5, Wentworth Chambers
180 Phillip Street
Sydney NSW 2000
Australia

Tel:    (61 2) 9231 1964
Fax:   (61 2) 9232 8995

Email: john.sheahan@5wentworth.com.au

"B"

**FEDERAL COURT OF AUSTRALIA – ANNUAL REPORT 2006-2007**

**Figure 5.5 – Time span to complete benchmark**
2002–03 to 2006–07



☒ Percentage Completed    – – – 85% Benchmark

The total number of matters (including appeals but excluding Native Title) completed for each of the last five years and the time span for completion are shown below.

**Finalisations of major COAs including appeals and related actions excluding Native Title COAs**
National totals by financial year

| Year | 2002–03 | 2003–04 | 2004–05 | 2005–06 | 2006–07 |
|---|---|---|---|---|---|
| Percentage Completed | | | | | |
| 85% Benchmark | 85% | 85% | 85% | 85% | 85% |
| Under 18 Months | 4131 | 5536 | 3956 | 5622 | 4851 |
| % of Total | 79.5% | 91.9% | 89.6% | 91.1% | 92.2% |
| Over 18 Months | 1066 | 487 | 461 | 550 | 487 |
| % of Total | 20.5% | 8.1% | 10.4% | 8.9% | 9.3% |
| Total COAs | 5197 | 6023 | 4417 | 6172 | 5262 |