**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| AUSTRALIAN BROADCASTING CORP.; ) | |
| *aka* ABC AUSTRALIA; ) | |
| ABC CORPORATIONS 1-100; ) | |
| LIZ JACKSON; ERIC CAMPBELL; ) | **RESPONSE** |
| JOSEPH A. CAFASSO; EDWARD A. ARTIS; ) | |
| KNIGHTSBRIDGE INTERNATIONAL, Inc.; ) | |
| KNIGHTSBRIDGE INTERNATIONAL ) | |
| HUMANITARIAN RELIEF AND HUMAN ) | |
| IMPROVEMENT PROGRAMS, INC.; ) | **Case #: 08-CV-2356** (DAB) |
| ROBERT C. MORRIS; ) | |
| PARTNERS INTERNATIONAL FOUNDATION; ) | |
| WILLIAM JOHN HAGLER, ) | |
| Both Individually and Severally, ) | |
| and DOES 1 through 7, inclusive, ) | |
| *Defendants.* ) | |
| _____ ) | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO ABC'S MOTION TO DISMISS FOR LACK OF SUBJECT**
**MATTER JURISDICTION AND *FORUM NON CONVENIENS***

<table>
<tr><td align="center">

John Edwards Tiffany, Attorney (JT-7322)
*Lead Counsel for Counter Terrorist Group US*
Law Offices of John E. Tiffany P.C.
The Robert Treat Center
50 Park Place, 10th Floor,
Newark, New Jersey 07102
Tel:  (973) 242-3700
Email: Jet@Jet4Law.com

</td><td align="center">

Vijayant Pawar (VP-7642)
*Counsel for Counter Terrorist Group US*
Law Offices of VIJAYANT PAWAR
35 Airport Road, Suite 330
Morristown, New Jersey 07960
Phone: (973) 267-4800
Email: vpawar@pawarlaw.com

</td></tr>
</table>

TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………....……    i

PRELIMINARY STATEMENT…………………………………..……    1

INTRODUCTION……………………………………………..…    1

    A.   ABC's Motion to Dismiss for Lack of Subject Matter Jurisdiction…..    2
    B.   ABC's Motion to Dismiss for *Forum Non Conveniens* Fails on its Face..    2

DISPUTED ABC "FACTS"……………………………………………    2

ARGUMENT

I.     THIS COURT DOES HAVE SUBJECT MATTER JURISDICTION……..    6

    A.    ALL PREDICATE ACTS OF INFRINGEMENT
        OCCURRED WITHIN THE USA……………………………..    7

    B.    ABC'S DOMESTIC ACCESSIBILITY ARGUMENT
        IS IRRELEVANT IN THIS CASE……………………………..    11

    C.    ABC'S SECONDARY LIABILITY ARGUMENT
        IS ALSO IRRELEVANT IN THIS CASE………………………..    11

II.    THIS COURT SHOULD NOT DISMISS FOR *FORUM NON CONVENIENS*….    12

A.    ABC AGREED TO LITIGATE IN THE UNITED STATES NOT AUSTRALIA…    13

B.    THE BURDEN OF PROOF IS ON THE DEFENDANT…………………...    13

C.    AUSTRALIA IS NOT AN ADEQUATE ALTERNATIVE FORUM……….    14

D.    IDEMA IS NOT A STATELESS PERSON AND IS ENTITLED TO DEFERENCE…    20

E.    CALIFORNIA LAW – CHOSEN BY THE ABC –
       ALLOWS EXTRINSIC EVIDENCE……………………………………    23

III.   THE KNIGHTSBRIDGE DEFAULTS………………………………..    25

IV    THE COURT SHOULD ALLOW PLAINTIFFS TO CONDUCT DISCOVERY
    TO ESTABLISH WITH ADDITIONAL SPECIFICITY THAT THE PREDICATE
    ACTS WERE COMMITTED IN THE UNITED STATES…………………    25

CONCLUSION…………………………………………………..…..    26

**PRELIMINARY STATEMENT**

For purposes of clarity, this opposition refers to the Counter Terrorist Group US, Counterr Group, and Idema, as "Plaintiffs" and defendants ABC and Liz Jackson, as "ABC."

The ABC's motion relies primarily upon their quest to transfer the case to Australia and skillfully ignores two preeminent points 1) that the copyright violations in Australia were borne of predicate acts occurring exclusively inside the continental United States by <u>both</u> ABC and their co-defendants, 2) a) that ABC has an official office in New York and contacts with New York, b) has registered with the District of Columbia Secretary of State to do business in the United States, c) has a registered agent for service of process in Washington, DC, d) has an official office and news bureau in Washington, DC, e) and has made previous contractual written and oral agreements with Plaintiffs specifying a choice of law as California or North Carolina— <u>not</u> Australia, to rule any conflict between ABC and/or Eric Campbell and Jack Idema and/or Counterr Group.

While taken on their face, many of ABC's defenses and arguments seem valid, unfortunately they are derived from either misstated facts made by ABC's various attorneys, or wishful thinking while ABC evidence and actual witnesses, such as ABC's Anne Delaney, remain silent, relying solely upon their counsel to assert that which they dare not. Attempting to tread a fine line between a motion to dismiss and a summary judgment motion—ABC's voluminous affidavits and exhibits cross that line, requiring either denial, or discovery before a decision can be made. Or, in the alternative, striking ABC's collateral often inappropriate or un-related *ad hominem* attacks, because the only facts properly before this Court as evidence are the allegations in the complaint and the verified statements by parties actually present during the events.

**INTRODUCTION**

This suit is fundamentally a case about whether there has been a copyright infringement of Plaintiffs' photographs, and if so, whether there are damages and remedies for ABC's infringements.  Not surprisingly, ABC's Rule 12(b) motion to dismiss lacks any substantial basis.

A.    <u>ABC's Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>:

1.    Blatantly avoids ever stating where ABC actually obtained copies of the infringed photographs, instead focusing solely on how and where ABC has published them.

2.    Ignores the predicate acts of copyright infringement which occurred in the continental United States, instead shifting focus to arguments about what server they can be accessed on.

B.    <u>ABC's Motion to Dismiss for *Forum Non Conveniens* Fails on its Face</u>:

1.    Ignores the fact that ABC submitted to the jurisdiction of United States Courts when they registered their company in the United States with the District of Columbia Secretary of State (John Edwards Tiffany Declaration ¶ 2).   ABC's motion carefully waltz's around their legal status as a United States entity capable of suing, and being sued in the United States.

2.    While championing ABC's preferred choice of Australian law, and Afghan law, ABC fails to explain or address the contracts entered into by ABC which specified that disputes between ABC/Campbell and Idema/Counterr Group would be governed by Ninth Circuit law and in the United States *and al-Qaida Terrorist Training Tapes* or copyright disputes, would be "United States Copyright Law." law (Jack Idema Affidavit ¶ 3).

3.    Ignores the fact that ABC submitted to the jurisdiction of United States Courts when they entered into contracts with Jack Idema in return for having broadcast rights to Idema's *8mm VideoX al-Qaida Training Tapes*, and photographs (Idema Affidavit ¶ 4).

4.    Attempts to paint Idema as a vagabond stateless citizen, when in fact, he is a citizen of the United States and a resident of New York (Idema Affidavit ¶ 6).

ABC's motion therefore fails to make a case for *forum non conveniens*, fails to defeat the claims for infringement, and avoids the other claims.

## DISPUTED ABC "FACTS"

ABC paints their version of the facts on page 3 of their brief in a clear attempt to poison the judicial waters. While skillfully put forth as "facts," the reality is quite different.

**ABC "Fact" 1:**    In its motion, ABC claims that at the time the program was broadcast, in March 2005, Idema had been convicted by the Afghan government.

2

| | |
|---|---|
| Reality: | Idema and his team had been found innocent of all charges by the Afghan Appeals Court in a three month long trial *de novo* in February 2005. |
| **ABC "Fact" 2:** | ABC claims that Idema had been convicted or running a private prison and torturing suspected terrorists.[1] |
| Reality: | Apparently ABC relies primarily on other reporters who had never seen the official charges which were actually quite different- and which this Court has been given evidence of in another case.  One of those charges was that Idema had entered the country illegally (overturned in December 2004 after Idema presented video evidence of his official arrival into Kabul's Diplomatic Entry Point at Kabul Airport).  He was never charged with torture. (*Generally,* Idema CBS Case Affidavit) |
| **ABC "Fact" 3:** | Idema claimed he spent 20 years as a Green Beret on secret missions around the world. |
| Reality: | Idema never claimed such a thing, this was an allegation invented by ABC's co-defendants— Edward Artis and Robert Morris to garner media support in their defamation campaign. |
| **ABC "Fact" 4:** | Idema was refused permission to re-enlist in the Green Berets. |
| Reality: | Idema re-enlisted several times, including in 1986, 8 years after ABC claimed he had been thrown out of the army.  Plaintiffs intend to vigorously address that at trial.  ABC has no real military document stating this, nor does one exist. |
| **ABC "Fact" 5:** | Idema "convinced" media outlets he was an expert on terrorism. |
| Reality: | The US Government has never disputed that Idema <u>is</u> an expert on terrorism. |
| **ABC "Fact" 6**: | In an attempt to somehow decrease protection of the infringing photos or warrant their theft, ABC repeatedly refers to the photos as "Torture Photos." |
| Reality: | No photo depicts any form of abuse or torture**.** |
| **ABC "Fact" 7:** | Idema claims ABC conspired with "humanitarian aid organizations around the world" to defame Idema. |

---

[1] Even if Idema was a despicable character, that should not influence this Court's decision.  Even the worst criminal is protected by the laws of our country and entitled to seek redress for wrongs against him through the courts. It is for a jury to decide his character and veracity.

| | |
|---|---|
| Reality: | Plaintiffs claimed ABC conspired with two small organizations, both co-defendants and US corporations; Partners International and Knightsbridge. |
| | |
| **ABC "Fact" 8:** | When Eric Campbell met Idema he "believed" Idema that Idema was a counter-terrorism expert. |
| Reality: | Campbell still believes it, and disagreed with the "message conveyed" by ABC's *Jack of All Trades* story. (Campbell Decl. ¶8) |
| | |
| **ABC "Fact" 9:** | Idema's other suits against media outlets are basically based on conspiring to defame. |
| Reality: | Rubbish, the other suits filed are primarily for specific copyright infringement. |
| | |
| **ABC "Fact" 10:** | Idema appears to be living and working in Afghanistan |
| Reality: | Idema has not been in Afghanistan since May 2007. |
| | |
| **ABC "Fact" 11:** | Idema's professional letterhead is in Arabic and he is currently practicing law in Afghanistan. |
| Reality: | Idema's Afghan letterhead is in *Dari* and although admitted to the Afghan Courts, he is not practicing law in Afghanistan or anywhere else. |
| | |
| **ABC "Fact" 12:** | Idema's multiple residences prove he is not a New York resident. |
| Reality: | New York allows multiple residences— the only important factor is domicile.  Idema's permanent home, domicile, and residence is Poughkeepsie, NY, where he has maintained a residence since 1963. |
| | |
| **ABC "Fact" 13:** | None of the other defendants have been served. |
| Reality: | All defendants have been served with the exception of Joseph Cafasso who, in spite of all investigative efforts, cannot be located. |
| | |
| **ABC "Fact" 14:** | The ABC has little or no contact in the United States. |
| Reality: | The ABC is registered as a foreign corporation doing business in the District of Columbia.  Its New York office was intimately involved in the predicate act of copying Plaintiffs' photographs and transmitting them from New York and Washington to Australia. |

4

**ABC "Fact" 15:**    All of the relevant witnesses are in Australia.
Reality:    Only <u>two</u> "relevant" witnesses are in Australia; Eric Campbell and Anne Delaney. The other witnesses are in the United States;

        Jack Idema (NY),
        Robert Morris (CT),
        Edward Artis (CA),
        Knightsbridge (Ohio)
        Jim Laws (Ohio)
        Joe Cafasso (NY & NJ)
        Thomas Bumback (VA)
        William Hagler (NC)
        Stacy Sullivan (NY)
        And approximately 20 other New York witnesses.

**ABC "Fact" 16:**    The "source materials" are in Australia.
Reality:    The sources were Edward Artis and Robert Morris.  The "source" materials are in the United States.  The source photos and emails are in the US.  Most documents are in the United States, and the source materials and documents emanated solely from the United States.

**ABC "Fact" 17:**    The "original footage" is in Australia.
Reality:    The original footage is in New York.  The original photos are in New York.  The infringed photos were <u>never</u> in Australia.  They were copied in the United States by ABC's co-defendants, then transmitted illegally to ABC New York by the source co-defendants, then copied to ABC Washington by the source co-defendants, and finally transmitted to ABC in Australia by ABC employees in the United States.

Simply put, the truth is a question of fact for the jury, for it is the province of the jury to find the facts, not for attorneys to recite the facts as they see them.  *See, Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 172 (2d Cir. 1999); *EP Medsystems, Inc. v. Echocath, Inc.*, 235 F.3d 865, 875 (3d Cir. 2000).

5

**ARGUMENT**

**I.    THIS COURT DOES HAVE SUBJECT MATTER JURISDICTION**

This case arises under multiple causes of action, including claims for copyright infringement, breach of contract, conversion, fraud, civil conspiracy, intentional interference with contract, interference with prospective economic advantage, unfair and deceptive trade practices, and defamation.

While jurisdiction primarily lays in the Federal Copyright Act**,** 17 U.S.C. § 301, *et seq.* Plaintiffs assert that there is also diversity of parties (William Hagler is a North Carolina resident, but his *actual* domicile is Florida). Defendants have raised various issues of jurisdiction, wrongfully asserting that Idema is a resident of either Afghanistan, Virginia, or North Carolina—throwing darts in a map wherever he might have been over the last years. Judicial notice should be taken as to where the United States Department of State recognizes Idema's domicile (New York).[2] Questions as to a person's "intent to change, or not to change, his domicile from [one state] to [another]" are "factual" questions, and therefore cannot be decided upon without discovery and testimony. *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984).

While defendants have also raised issues of foreign law (Australian and Afghan), the fact remains that ABC consented to the application of U.S. law in the December 2001-January 2002 contracts between ABC and Plaintiffs.

Plaintiffs assert that this case has standing to be heard in the United States Federal Courts under the Federal Copyright Act**,** 17 U.S.C. § 301, *et seq.* as the predicate acts of

---

[2] DOS Letter (April 28, 2008- "12 Jonathan Lane, Poughkeepsie, NY 12603), and subsequent delivery of unrestricted ten year passport to Idema in New York (Idema Affidavit ¶ 7). A party's citizenship for purposes of the diversity statute, 28 U.S.C. § 1332 (1994), is a mixed question of fact and law. *See*, *Francis v. Goodman*, 81 F.3d 5, 7 (1st Cir. 1996); *State Farm Mutual Automobile Insurance Co. v. Dyer*, 19 F.3d 514, 518 (10th Cir. 1994); *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992). An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile—not his residence. *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id*. at 948 (internal quotation marks omitted). At any given time, a person has but one domicile. *Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992). Domicile is established initially at birth and is presumed

copying the photographs in question will be proven to have taken place in the United States, not in Australia as Defendants' attorneys claim. The photographs are attached hereto with the valid copyright certificates received after the filing of the original complaint as Exhibits 1 thru 4.[3] Those photographs were intercepted and copied in the United States.

> **Here, the copyright claims are amazingly simplistic.**
>
> - Three or more photos, copyrighted by Plaintiffs in 2005, were intercepted and/or illegally downloaded off a private email through a server in the United States by unauthorized parties in the United States (Morris and Artis).
> - Those third parties then copied those photographs in the United States and then, and only then, transmitted them from the United States to ABC's office in the United States which then copied the photos and transmitted them to a person at ABC in Australia,[4] whose identify is unknown.[5]
> - That person, possibly Anne Delaney, then gave the photographs to Liz Taylor at ABC's Media Watch program, who then publicized them around the world and ABC continues to publicize them to this day.

## B.    ALL PREDICATE ACTS OF INFRINGEMENT OCCURRED WITHIN THE USA

In 1994, the Beatles and their *Yellow Submarine* found themselves in the United States, when the Ninth Circuit in *Subafilms, Ltd. V. MGM-Pathe Communications Co.* submarined their theory that "a claim for infringement can be brought under the Copyright Act . . . when the assertedly [sic] infringing conduct consists solely of the authorization within the territorial boundaries of the United States of acts that occur entirely abroad." Except in the Ninth Circuit, *Subafilms* is not binding and, as shown later, has been distinguished in district court decisions from other Circuits.

---

to continue in the same place, absent sufficient evidence of a change. *Linardos v. Fortuna*, 157 F.3d at 948.

[3] Although ABC incorrectly alleges Counterr Group does not have an interest in the infringed photos, it is clear on the face of the registrations that ABC's assertion is patently false.

[4] While stated upon information and belief, there is existing evidence supporting this, and as alleged in the Complaint, this can only be specifically ascertained through discovery

[5] Defendant Liz Taylor, in her affidavit filed in this Court claims it was not her, but places the blame on Anne Delaney.

In diametric opposition to Defendants' *Subafilms*[6] case theory, this case turns on the predicate acts of copyright infringement because those predicate acts occurred <u>entirely</u> within the United States as will be easily proven through discovery and as already alleged in the Complaint (*see* Complaint ¶¶ 7, 36, 37, 62, 127).[7]

The Supreme Court has noted that "an infringer is not merely one who uses a work without authorization by the copyright owner, but also one who *authorizes* the use of a copyrighted work without actual authority from the copyright owner."[8]  Indeed, the Ninth Circuit that handed down *Subafilms* later concluded that "an exception [to the rule that the Copyright Act does not apply extraterritorially] may apply where an act of infringement is completed entirely within the United States and that such infringing act enabled further exploitation abroad.[9]  Here, Plaintiffs' photographs were FIRST <u>copied in the United States</u> and only <u>then transmitted to Australia</u>.

ABC's claim that Plaintiffs lack subject matter jurisdiction based on the presumption against the extraterritorial application of US copyright laws[10] is incorrect and, if anything, serves to broaden the scope of allowable discovery.  Additionally, when predicate acts take place in the United States, a damages computation may include the defendant's overseas sales under ancillary theories of an equitable trust and constructive trust.[11]

As stated in the Complaint:

> "36.    Upon information and belief, Defendants obtained these
> photographs from a confidential email, and not only violated Plaintiffs'

---

[6] *Subafilms, Ltd. v. MGM-Pathe Communications Co.* 24 F.3d 1088, 1095 (9th Cir. 1994).

[7] "… Defendants obtained these photographs from a confidential email…" "Defendants' copyright violations … [were] derived from the interception of electronic communications…"

[8] *Sony Corp. of America v. Universal Studios, Inc.,* 464 US. 417, 435 n.17 (1984)

[9] *L.A. News. Serv. v. Reuters Television Int'l, Ltd.*, 340 F.3d 926, 928 (9th Cir. 2003) (citing *L.A. News. Serv. v. Reuters Television Int'l, Ltd. (Reuters III)*, 149 E3d 987, 992 (9th Cit. 1998)).

[10] *United States v. Aluminum Co. of America*, 148 F2d 416, 443 (2d Cit. 1945) Judge Learned Hand, writing for the Second Circuit, looked to the "effects" of the defendant's conduct in an antitrust case under the Sherman Act in *United States v. Aluminum Co. of America*, in which the sole issue was "whether Congress chose to attach liability to the conduct outside the United States of persons not in allegiance to it."

[11] *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 E2d 45, 52 (2d Cir. 1939).  In *Sheldon v. Metro-Goldwyn Pictures Corp.*, the lower court found direct infringement in the United States, and Judge Hand addressed the issue of "whether to include the profits made from exhibiting the infringing picture outside the United States."

copyright by publishing them, but also, upon information and belief, intercepted private and confidential correspondence, thereby violating a right to privacy and electronic communication laws. The ABC did not seek a license or permission to publish the photographs, nor was a license or permission obtained from Plaintiffs. The ABC Defendants published the photos and ignored all rights and privileges…

    37.    Defendants' copyright violations and the criminal liability derived from the interception of electronic communications (including their civil liability for violations of privacy) were knowing and planned acts [all of which took place in the United States]…"

These photographs were never in Australia and were never sent to or from Australia— until Artis and Morris gave them to ABC in the United States.  It is telling that the ABC is completely silent as to where they procured the photographs.  Because ABC's co-defendants'/co-conspirators' copying of Plaintiffs' copyright protected photographs (and emails) in the United States constituted a tort, Plaintiffs also acquired an equitable interest in all copies and profits stemming from those original copyright infringements, and the *Sheldon* court held that proof of direct infringement in the United States[12] allowed copyright owners to collect the infringers' overseas profits.[13]

Further, the claim of civil conspiracy creates joint and several liability of profits that the overseas co-conspirator generates from the predicate act of direct infringement within the United States,[14] even when personal jurisdiction cannot be had over all of the conspirators.[15]

---

[12] Indeed, courts are allowing copyright owners to recover extraterritorial profits stemming from infringing acts within the United States.  Curtis A. Bradley, "Territorial Intellectual Property Rights in an Age of Globalism," 37 *Va. J. Int'l L. J.* 505, 525 n.111 (1997) (citations omitted). This exception to the territorial approach to copyright laws rests on the idea that, when an infringement of copyright occurs in the United States, the owner of the copyright acquires an "equitable interest" in the infringing product, such that a court may impose a "constructive trust" with respect to the extraterritorial proceeds derived by a defendant from their news broadcast.

[13] *Id.*; *see also cf.* 17 US.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.").   The Second Circuit's post-*Sheldon* case law supports a plaintiff recovering extraterritorial actual damages (as opposed to Defendants' "profits") once an act of domestic infringement has been proven. *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 E2d 67, 73 (2d Cir. 1988).  In *Update*, the amount of damages was based on the defendants' profits. *Id.* at 70.

[14] 16 Am. Jur. 2d *Conspiracy* § 66, at 291 (West 1998) (citing cases).  "It is not necessary, in order for one member of civil conspiracy to be liable, that all members of conspiracy be named

The Southern District of New York, in *National Football League v. Primetime 24 Joint Venture*, found subject matter jurisdiction over a copyright action when the plaintiff alleged that the defendant "captures the over-the-air broadcast signals in the United States," even though defendant's retransmission of those signals happened outside the United States[16]

The SDNY court found that "PrimeTime's transmission of the signals captured in the United States is "a step in the process by which a protected work wends its way to its audience," although not the only, or the final, step, and an infringement, even though it takes one or more further steps for the work to reach the public." *Id*. at *6. This is precisely the situation in this case, where ABC's co-defendants and co-conspirators captured the electronic picture transmissions in the United States and then copied them in the United States, and then provided them to ABC offices in the United States, which only then transmitted them to Australia— thereafter broadcasting and publishing the infringing photographs and emails.

The NFL court held that PrimeTime's act of capturing the signals in the United States constituted a "domestic predicate act [which is] itself an act of infringement" in violation of the US copyright laws. Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying. A copyright is a right against the world, Australia does not offer safe haven.

Plaintiffs, in order to establish jurisdiction over extraterritorial acts, the domestic predicate act— taken alone or *inchoatus* as a precursor to ABC's infringement abroad— must only violate one of their exclusive rights under the copyright laws.

Where an individual commits an act of infringement in the United States that permits further reproduction outside the United States— such as when ABC's co-Defendants made unauthorized copies of copyrighted materials and then sent them out of the United States to

---

defendants or be joined as defendants; the plaintiff, at his or her option, may maintain a suit against any one or more of them.

[15] A suit between "citizens of a State and citizens or subjects of a foreign state" lies within federal diversity jurisdiction, 28 U.S.C. § 1332(a)(2), but that only empowers a court with subject matter jurisdiction.

[16] *National Football League v Primetime 24 Joint Venture,* No. 98 Civ. 3778, 1999 U.S. Dist. LEXIS 3592, at *3 (S.D.N.Y Mar. 24, 1999).

Australia— the Court may assert jurisdiction over those foreign acts and Plaintiffs may recover damages for ABC's infringing acts that took place extraterritorially.[17]

This case also includes ABC's[18] breach of a series of written and oral contracts, wherein Eric Campbell, on behalf of ABC promised not to use Idema's materials without permission or proper licensing, and therefore would not be preempted.[19]  Contracts generally affect only their parties; strangers may do as they please, so contracts do not create "exclusive rights" under copyright law.  Eric Campbell has admitted under oath (Campbell Decl. ¶25-27), that the ABC signed, and made written and oral contracts.[20]

**B.    ABC'S DOMESTIC ACCESSIBILITY ARGUMENT IS IRRELEVANT IN THIS CASE**

Plaintiffs agree.  ABC evades domestic liability in this case for Americans downloading the photos off an ABC server in Australia.  We need not waste the Court's time with an irrelevant argument—but Plaintiffs did not base their case on that mythical wishing well.  The gravamen of this case lies in the original predicate acts of infringement in the United States which allowed ABC to infringe the photos in Australia.  The photo versions ABC used have <u>never</u> been published or released— they were stolen.  The fact that ABC refuse to even watermark the photos or put a disclaimer, simply goes to malice.

**C.    ABC'S SECONDARY LIABILITY ARGUMENT IS ALSO IRRELEVANT IN THIS CASE**

ABC introduces their argument by claiming ABC "cannot be held secondarily liable for hypothetical (unalleged) downloading by U.S. visitors to its website."

---

[17] *Id.* at *10 (citing *Fun-Damental Too, Ltd. v. Gemmy Ind. Corp.*, No. 96 Civ. 1103, 1996 US. Dist. LEXIS 18653, at *14 (S.D.N.Y Dec. 17, 1996) (citing *Update Art, Inc. v Modiin Pub., Ltd.,* 843 E2d 67, 73 (2d Cit. 1988)).

[18] Including Defendant Eric Campbell who was acting both personally and on behalf of ABC.

[19] The complaint must only allege an "extra element" that changes the nature of the action.  *Del Madera*, 820 F.2d at 977.  The decision in *Landsberg v. Scrabble Crossword Game Players, Inc.,* 802F.2d 1193, 1196-97 (9th Cir. 1986), found that even an implied promise to pay required by *Desny v. Wilder,* 299 P.2d at 257 (Cal. 1956) is an "extra element" for preemption purposes. Rights created by contract are <u>not</u> "equivalent to any of the exclusive rights within the general scope of copyright."  *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988).  *ProCD, Inc. v. Zeidenberg*, 86 F 3d 1447 (7th Cir. 1996).

[20] *Lennon v. Seaman*, 63 F. Supp. 2d 428 (S.D.N.Y. 1999), *see also*: *Architectronics, Inc. v. Control Sys., Inc*, 935 F. Supp. 425, 438-41 (S.D.N.Y. 1996), Hon. Michael B. Mukasey for a detailed opinion on the SDNY preemption subject.

Plaintiffs agree, and hence waste no time of this Court with hypothetical arguments about hypothetical liabilities in hypothetical worlds. Plaintiffs merely pointed out that ABC, cannot say they didn't know the photographs were infringing, they admit it on their website, and the still refuse to take them down. Acts for a jury to hear when considering malice and bad faith, not something to waste this Court's day with.

Based upon the development of recent evidence, some derived from Jackson's and Campbell's filed declarations, Idema and Counterr Group are filing a request to file an Amended Complaint, although the amended complaint will <u>not</u> significantly differ from the original complaint, other than outlining the predicate acts of copying in the United States already sufficiently alleged upon information and belief in the Complaint and attaching the copyright certificates received after the filing of the complaint (*see* Exhibits 1 thru 4). They were previously provided to ABC on May 7, 2008 as part of a settlement discussion.

ABC's filed 12(b)(6) motion is tantamount to a summary judgment motion and any decision would be premature until such time as discovery has been concluded, or significantly developed to outline the predicate acts of copying which occurred in the United States, and may help to identify one or more John Doe Defendants.[21]

## II.    THIS COURT SHOULD NOT DISMISS FOR FORUM NON CONVENIENS

ABC and Liz Jackson have moved to dismiss an action on the ground of *forum non conveniens*. By making a *forum non conveniens* application, the defendant acknowledges that the court has jurisdiction, but asks the court not to exercise that jurisdiction because of the inconvenience that would arise if it did so. The court must balance conveniences, but extra weight must be given not to ABC as Defendants argue, but to the Plaintiffs' choice of forum. It is well established that if a plaintiff's choice of forum was legitimate and reasonable, a defendant must show compelling arguments to convince a court to refuse jurisdiction. If a transfer would simply shift the inconvenience from one party to the other, the plaintiff's choice of forum should not be disturbed. In this case, transferring the case to Australia would simply shift the inconvenience from one party (ABC)[22] to nine parties

---

[21] Liz Jackson, in her filed affidavit has identified Anne Delany as John Doe #1.
[22] ABC has consented to dismiss Liz Jackson, and therefore Plaintiffs will not be addressing her now moot brief.

(Counterr Group, Counter Terrorist Group US, Master Sergeant Thomas Bumback, Jack Idema, Robert Morris, William Hagler, Partners International, Edward Artis, and the Knightsbridge companies).

## A.    ABC AGREED TO LITIGATE IN THE UNITED STATES NOT AUSTRALIA

ABC and Idema, entered into multiple written and oral agreements, including: the "ABC Australia Agreements," entered into in December 2001 and January 2002.

> "Choice of Law/Venue--- All parties agree to the laws applicable in the State of California (including United States copyright law); and to jurisdiction, in North Carolina, or in California…"

Although the ABC's New York attorneys have refused to provide copies of these contracts and failed to make initial disclosure deadlines originally agreed upon, stating "they do not benefit our client's position and are not in our client's interest" the fact remains that ABC's attorneys do have copies in their possession (Tiffany Decl. ¶ 3).  Additionally, Eric Campbell has admitted the existence of these contracts:

> "This licensing agreement was entered into on or about December 2001 to January 2002, in Afghanistan….When I entered into this agreement I was not aware that Idema was a resident and/or citizen of New York, only that he was a citizen of the United States." (Campbell Declaration ¶ 25, 27)

## B.    THE BURDEN OF PROOF IS ON THE DEFENDANT

In New York, there is a strong presumption in favor of the plaintiff's choice of forum. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947); *R. Maganlal & Co.*, 942 F.2d 164, 167 (2nd Cir. 1991); *WIWA v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000); and *Maran Coal Corp. v. Societe Generale de Surveillance S.A.*, No. 92 CIV 8728, 1993 US.Dist. LEXIS 12160 at *6 (S.D.N.Y. September 2, 1993).

A defendant must show compelling evidence in order to disturb the choice of forum. The burden of proof is on the defendant: *Strategic Value Master Fund, Ltd. v. Cargill Fin. Serv. Corp.*, 421 F.2d 741, 754 (S.D.N.Y. 2006).  Here, ABC, a multinational global mega media corporation which employes one of the largest law firms in the world and has an abundance of attorneys on its corporate staff, is pitted against three Plaintiffs with two attorneys who are sole practitioners on a contingency fee basis.  The court must consider a defendant's vast resources compared with the plaintiff's limited resources as an aggrieved

individual: *See Guidi v. Inter Continental Hotels Corp.*, 95 CIV 9006, 2003 U.S.Dist. LEXIS 85972 (S.D.N.Y. November 29, 2009), and WIWA: "defendants have not demonstrated that these costs [of shipping documents and witnesses] are excessively burdensome, especially in view of defendant's vast resources."  *See also, Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289 (S.D.N.Y. 2003) at 341: "A countervailing factor is the relative means of the parties."

## C.    AUSTRALIA IS **NOT** AN ADEQUATE ALTERNATIVE FORUM

Equally important— and skillfully left out of Mr. Sheehan's enlightening declaration of Australian law and courts— is the fact that <u>contingency fees are illegal</u> in Australia.[23] Therefore, Plaintiffs, who have obtained counsel only because the two attorneys agreed to work on a contingency fee basis, would be unable to obtain counsel in Australia, and therefore be denied any chance of justice.[24]

---

[23] The Queensland Government asked for submissions on reform of the legal profession. Numerous practitioners requested the prohibition on percentage contingency fees be removed. The arguments were that removal would enhance access to justice by increasing the willingness of practitioners to take matters on a speculative basis. The Government's *Green Paper: Legal Profession Reform,* released in June 1999 on p 21 rejected that argument, stating:

> "It is recognized that the conduct of legal actions in exchange for a share in the proceeds of the litigation may seem attractive to some potential litigants. However, the public policy considerations make contingency fees an unacceptable option. One issue is the absence of a compelling case for legal practitioners to share in the proceeds from an action rather than to be fairly paid for their time and costs. There would be particular concern if charging on a share of the proceeds basis were to become the norm. The practitioner's interest in the proceedings could be in conflict with practitioner's duty to the court. It might encourage litigation with limited prospects of success motivated by the potential returns for the practitioners should they be successful or reach a settlement..."  http://www.usfca.edu/pj/brockovich-ross.htm

Ysaiah Ross (formerly Stan Ross) is an academic barrister who has published a number of books on the legal profession and ethics. Most recently 'Ethics in Law, 2nd ed' (Butterworths 1998), observed the following about the Australian legal system: "These views would have greater validity if there were adequate legal aid in Australia for bringing speculative actions. This is not the case and thus many people are denied access to the legal system."

[24] If a district court determines that the balance of interests favors the alternative forum, then it must "ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice." *See C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (recognizing that "courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country")

In most civil cases in the United States, attorneys are paid on a contingency fee basis—as in this case.  The contingency fee is about giving access to the legal system for those without the means to pay a lawyer to represent them.  This is in contrast to Australia, where contingency based fees are prohibited and considered unethical.[25]

In 2006, the 2nd Circuit Federal Court in New York issued a decision in the famous Coca Cola case.  Coca Cola took over assets of Jews expelled from Egypt in the 1950s and was sued in New York. *Bigio v. Coca Cola Company*, 448 F.3d 176 (2d Cir. 2006), *certiorari to Sup. Ct. denied*.  In that case, the plaintiffs were Canadians and non-residents of New York.  The court denied Coca Cola's *forum non conveniens* motion and the decision was later affirmed by the U.S. Supreme Court, which denied *certiorari*.  The 2nd Circuit stated that applying foreign law was not a problem because "courts of this Circuit are regularly called upon to interpret foreign law without thereby offending the principles of international comity."  Nor are witnesses abroad a problem.  They can be flown into the U.S. or Letters Rogatory can be issued to foreign courts to collect their testimony.[26]  Further, it was held that in a *forum non conveniens* scenario, a court applies the balance of conveniences, but preference (and weight) must be given to the fact that plaintiffs chose this particular forum for "legitimate reasons."  The fact that plaintiffs could sue in Canada was not relevant because it was "perfectly reasonable to sue in the US."

The clearly established law of the Supreme Court and this Circuit directs that a "plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 (1981).  For a case to be dismissed on *forum non conveniens*, ABC must carry a heavy burden of showing that a jurisdictionally and practically "adequate alternative" forum exists.  *Id. at* 254 n.22; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07 (1947); *Blanco v. Banco Industrial*, 997 F.2d 974, 980 (2d Cir. 1993); *In re Union Carbide*, 809 F.2d

---

[25] http://www.lawhandbook.sa.gov.au/ch12s11s01.php

[26] It should be noted that Article 23 of the Hague Convention specifically permits a contracting State to "declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries." *See,* The Hague Convention, art. 23.  One jurisdiction that has executed a declaration under Article 23 is Australia; denying a plaintiff's right to pre-trial discovery of documents— a critical need for the litigation of this case.

195, 198 (2d Cir. 1987); *Calavo Growers v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir. 1980), *cert. denied*, 449 U.S. 1084 (1981).

ABC takes great pains to prove Australia is a adequate forum for this case,[27] but as stated above, it would deny Plaintiffs any chance for counsel, since Australia law forbids attorneys from advocating a case on a contingency fee basis—and while ABC focuses on the fact that their program only aired in Australia, and their website is only focused towards Australians, at least one court has found that the "doctrine of *forum non conveniens* is obsolete in a world in which markets are global and in which ecologists have documented the delicate balance of all life on this planet.  The parochial perspective embodied in the doctrine of *forum non conveniens* enables corporations to evade legal control merely because they are transnational.  This perspective ignores the reality that actions of our corporations affecting those abroad will also affect Texans." *Dow Chem. Co. v. Castro Alfaro*, 786 S.W.2d 674, 689 (Tex. 1990) (Doggett, J., concurring).  According to Justice Doggett, private interest factors of the parties were "obsolete" in an era of modern transportation and communication. *Id*. at 683-84

Justice Doggett noted that less than four percent of cases dismissed under the doctrine ever reach trial in a foreign court. *Id*. at 683; *see also* David W. Robertson, *Forum non conveniens in America and England: A Rather Fantastic Fiction*, 103 L.Q. REV. 398 (1987).

There, as here, the bottom line is simply that dismissal for lack of convenience will mean an end to this litigation and save ABC from ever confronting their victims on the merits.  Moreover, Justice Doggett found that even the traditional balancing of factors favored trial in Texas.  As far as public interest factors were concerned, Texas had an interest in asserting jurisdiction over defendants domiciled there. *Alfaro*, 786 S.W.2d at 684-86 (Doggett, J. concurring).  New York has identical interest in asserting jurisdiction over the plaintiff residing here.

---

[27] In order to prevail on its motion to dismiss based on *forum non conveniens*, ABC has the burden of demonstrating that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) Plaintiffs can reinstate their suit in the alternative forum <u>without</u> undue inconvenience or prejudice. *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).

Technological innovations and improvements in the rules of procedure mean that the balance of convenience has changed completely.  It is no longer necessary to put original documents in evidence— copies are admissible, including scanned electronic copies, which can be e-mailed from Australia to New York instantaneously at very low cost.[28]  Travel costs are much reduced, but ABC witnesses no longer need to travel at all—they can give their testimony by video-link in open court, with ample opportunity for cross-examination. Demeanor can now be assessed at a distance.  Foreign law need no longer be proved as fact, so expert foreign witnesses are no longer essential. Rule 44.1 of the Federal Rules of Civil Procedure, which deals with proof of foreign law, is so broad in its scope that it is now possible to brief Australian law in the same way as U.S. law—insignificant in the instant case because the ABC has made a prior choice of law, designating US law as controlling.

The *capias ad respondendum* has given way to personal service of summons or other form of notice, and *due process* requires only that in order to subject a defendant to a judgment *in personam,* even if ABC was not present in New York and Washington, they need only have minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U. S. 457, 311 U. S. 463. *See* Holmes, J., in *McDonald v. Mabee,* 243 U. S. 90, 243 U. S. 91. *Compare Hoopeston Canning Co. v. Cullen,* 318 U. S. 313, 318 U. S. 316, 318 U. S. 319. *See Blackmer v. United States,* 284 U. S. 421; *Hess v. Pawloski,* 274 U. S. 352; *Young v. Masci,* 289 U. S. 253.

Since the corporate personality is a fiction, although intended to be acted upon as though it were a fact, *Klein v. Board of Supervisors,* 282 U. S. 19, 282 U. S. 24, it is clear that, unlike an individual, ABC's corporate "presence" within New York and Washington can only be determined through discovery relating to the ABC's activities carried on in its behalf by those who act for it in the "two small, leased, convenience offices" the ABC claims are insignificant (Simpson Decl. ¶ 12).  To say that the corporation is "present" there as to satisfy due process requirements for the litigation of suits against it in the United States courts, is a

---

[28] Attorneys for the ABC have already admitted that their clients have provided all their documents to their NY Attorneys, although the attorneys have refused to exchange initial disclosures (Tiffany Decl. ¶ 4).

question to be left for discovery. But the presence of the corporation's agent in Washington, DC and an office in New York and Washington should be deemed to be sufficient to satisfy the demands of due process (*id.* at 326 U. S. 317). L. Hand, J., in *Hutchinson v. Chase & Gilbert,* 45 F.2d 139, 141. ABC, much to the chagrin of its New York attorneys, registered as a foreign corporation in Washington where it earned the right to sue, and be sued, making it reasonable to require the ABC to defend this suit. *International Shoe v. State of Washington*, 326 U.S. 310 (1945), *see also*, Tiffany Decl. ¶ 5).

"Presence" in the state has never been doubted when the activities of a corporation have not only been continuous and systematic, but also give rise to the liabilities sued on, even if no consent to be sued or authorization for an agent to accept service of process has been given. *St. Clair v. Cox,* 106 U. S. 350, 106 U. S. 355; *Connecticut Mutual Co. v. Spratley,* 172 U. S. 602, 172 U. S. 610-611; *Pennsylvania Lumbermen's Ins. Co. v. Meyer,* 197 U. S. 407, 197 U. S. 414-415; *Commercial Mutual Co. v. Davis,* 213 U. S. 245, 213 U. S. 255-256; *International Harvester Co. v. Kentucky, supra; cf. St. Louis S.W. R. Co. v. Alexander,* 227 U. S. 218.

In fact, some decisions have held a corporation amenable to suit solely because it has given its consent to service and suit, consent being implied from its presence in the state through its authorized agents. *59 U. S. 407*; *St. Clair v. Cox, supra*, *106 U. S. 356; Commercial Mutual Co. v. Davis, supra*, *213 U. S. 254; Washington v. Superior Court*, *289 U. S. 361, 289 U. S. 364-365. See also Smolik v. Philadelphia & Reading Co.*, 222 F.1d 8, 151. (*id.* at *Page 326 U. S. 319*).

When ABC exercises the privilege of conducting its activities within the states, it enjoys the benefits and protection of the laws of those states. The exercise of that privilege gives rise to obligations, and, as here, when the predicate acts of copyright infringement are connected with ABC's activities within the states, the corporation must be required to respond to a suit brought to enforce those copyrights and is hardly unreasonable. *Compare International Harvester Co. v. Kentucky, supra, with Green v. Chicago, B. & Q. R. Co., supra, and People's Tobacco Co. v. American Tobacco Co., supra. Compare Connecticut Mutual Co. v. Spratley, supra,* 172 U. S. 619, 172 U. S. 620, *and Commercial Mutual Co. v. Davis, supra, with Old Wayne Life Assn. v. McDonough, supra*.

18

In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U. S. 186, 433 U. S. 204 (1977). *See also Rush v. Savchuk,* 444 U. S. 320, 444 U. S. 332 (1980).

Applying proper standards, the activities carried on in behalf of the ABC in the State of New York and the District of Columbia were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in interstate business, in the course of which ABC received the benefits and protection of the laws of the District of Columbia, including the right to resort to the courts for the enforcement of its rights as a foreign corporation registered in the District of Columbia. The copyright infringement which is at issue here arose out of those very activities—collecting "news" in the United States. It is evident that ABC's operations establish sufficient contacts or ties within the United States to make it reasonable and just, according to the traditional American concept of fair play and substantial justice, to permit the federal courts to enforce Plaintiffs' copyrights which the ABC first violated here. Hence, the present suit proceeding in New York is neither unreasonable nor oppressive.

Nor is ABC's claim that their actions had no impact in New York. Idema lives in New York, he was born in New York, and his entire family is in New York. ABC's co-defendants had repeatedly circulated articles they engineered in New York and should have been expected to re-circulate ABC's website report in New York, which they did. *Calder v. Jones*, 465 U.S. 783 (1984).

The libelous program concerned the New York and North Carolina activities of a New York resident. It impugned the professionalism and honesty of a career which has been solely centered in New York and North Carolina for 30 years. The ABC stories were drawn from American sources, and the brunt of the harm, was suffered in New York. In sum, the United States was the focal point both of the story and of the harm suffered. Jurisdiction over ABC is also proper in based on the "effects" of ABC's conduct in the United States, including their illegal conduct publishing a sealed draft PSI copied from a confidential US federal court records in violation of law. *World-Wide Volkswagen Corp. v. Woodson,* 444 U. S. 286, 444 U. S. 297-298 (1980); Restatement (Second) of Conflict of Laws § 37 (1971).

19

ABC argues that they did not intend for the article to be circulated in New York. The mere fact that they can "foresee" that the article will be circulated and have an effect in California is not sufficient for an assertion of jurisdiction. *World-Wide Volkswagen Corp. v. Woodson, supra,* at 444 U. S. 295; *Rush v. Savchuk, supra,* at 444 U. S. 328-329.

But this analogy does not wash.  ABC is not charged with mere untargeted negligence.  Rather, their intentional, and allegedly tortious, actions were expressly aimed at a New York resident in a news story that they knew would have a potentially devastating impact upon Plaintiffs and would be re-circulated by Morris and Artis throughout the country, especially in New York, North Carolina, and California.  And they knew that the brunt of that injury would be felt by Idema in the State in which he was born, lives, and has his family.  Under the circumstances, the ABC should have reasonably anticipated being hailed into court in New York to answer for the truth of the statements made in their story and the source of their infringing photos (*id.* at pg. 465 U. S. 790. *World-Wide Volkswagen Corp. v. Woodson, supra,* at 444 U. S. 297; *Kulko v. California Superior Court, supra,* at 436 U. S. 97-98; *Shaffer v. Heitner, supra,* at 433 U. S. 216).  An individual injured in America need not go to Australia to seek redress from persons who orchestrate these deeds out of New York and Washington, DC offices in a conspiracy with United States citizens operating out of California, North Carolina, and Connecticut.

Finally, as ABC stipulated to application of California and/or North Carolina law in determining disputes under its written agreement with Idema and Counterr Group, ABC's plea for Australian law to now be used is a meritless transparent argument, just as ABC's failure to advise their attorneys, or the Court, that they are registered to do business in the United States, making their Washington, D.C. corporation a legal entity having submitted to the jurisdiction of the United States courts.

**D.    IDEMA IS NOT A STATELESS PERSON AND IS ENTITLED TO DEFERENCE**

ABC's contention that Idema appears to be a stateless person and entitled to nothing, are quite simply ridiculous.  ABC's scattershot attempt to make Idema stateless in their motion is supported by unfounded and ludicrous claims that Idema:

*1.*      *"[N]ow appears to be living and working in Afghanistan."*
  - Idema has not been in Afghanistan since May 2007.

2.    *"Idema submitted a letter to a court in North Carolina… providing a PO box for him in North Carolina" [and is therefore a North Carolina resident].*
- The PO Box was for Counterr Group as the case involved Counterr Group.

3.    *Idema "has provided addresses in… Dulles, Virginia…" [and is therefore a Virginia resident]."*
- This Court is personally aware that Idema received mail while in Afghanistan through the US State Department Drop Box located in Dulles, Virginia which forwards mail to the US Embassy in Afghanistan.

4.    *Idema has declared different places of residence… [including] various locations in Afghanistan.*
- It would be ludicrous to consider that Idema was declaring his domicile as Afghanistan when at the time his residency was involuntary.  Perhaps ABC's position is that by providing this Court a temporary mailing address in Afghanistan Idema somehow gave up his United States citizenship?  His New York home?  His New York driver's license?

Contrary to ABC's strained attempt to declare Idema a man without a country, he holds a valid, 10 year, unrestricted US Passport, issued to him in New York by the Department of State, mailed to him in New York by the US government, and listing his home address as New York.

ABC, in their attempt to remove this case, misses the mark by a long shot – the relevant test is domicile, not residency.  A person can have unlimited residences, but only one domicile.  For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile.  "To effect a change in domicile, two things are indispensable: First, residence in a new domicile, and second, the intention to remain there indefinitely." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).  (Idema Affidavit ¶ 8).

Legal residence or "domicile" is the place where a person has fixed an abode with the present intention of making it his or her permanent home.  Once established, a domicile continues until it is superseded by a new one.  A domicile is presumed to continue, and the burden of proof ordinarily rests on the party asserting the abandonment of one domicile to demonstrate the acquisition of another.  (H. John Idema Affidavit ¶ 3).  Residency means you have a presence with a purpose.  When you complete that purpose, you will return to your domicile.  An example is a doctor's residency in a hospital. The doctor is there to

21

complete his purpose, and when he is finished he leaves.  A domicile needs no purpose. It is not necessary to justify your presence at your domicile.  It is your permanent home.

"The test of intent with respect to a purported domicile has been stated as 'whether the place of habitation is the permanent home of a person, with the range of sentiment, feeling, and permanent association with it.'" *In re Bodfish v. Gallman*, 50 A.D.2d 457, 458 (N.Y. App. Div. 1976), quoting *In re Estate of Bourne*, 181 Misc. 238, 246 (N.Y. Sur. 1943).  (H. John Idema Affidavit ¶4).

Some indicators of domicile include;

- Moving professional relationships to New York.
- Moving valuable tangible personal property to a New York residence.
- Disposing of the residence in the former state of domicile.
- Listing a New York address on passport.
- Recognition of a New York residence by the US Department of State.
- Receipt of official US mail in New York.
- Executing a new will reciting New York as the state of domicile.
- Presence of family members.

Although the domicile and residence of a person are usually in the same place, and the two terms are frequently used as if they have the same meaning, they are not synonymous.  A person can have two places of residence, such as one in the city and one in the country, but only one domicile.  Residence means living in a particular locality, but domicile means living in that locality with the intent to make it a fixed and permanent home. Residence merely requires bodily presence as an inhabitant in a given place, whereas domicile requires bodily presence in that place and also an intention to make it one's permanent home.

A residence is generally transient in its nature, it becomes a *domicil* when it is taken up *animo manendi*. A domicile, according to NYCRR [section] 102.2(d) (1), for example, is "the place which an individual intends to be his permanent home--the place to which he intends to return whenever he may be absent."

Under both the New York Constitution and the New York Election Law, "no person shall be deemed to have gained or lost a residence… by reason of his or her presence or absence, while . . . confined in any public prison." N.Y. Const. art. II, § 4; *see also* N.Y. Elec. Law § 5-104(1) (same).  In spite of Mr. Davis' assertion that Idema now appears to be a

resident of Afghanistan, these provisions clearly establish that Idema did not become an Afghan[29] resident because of his incarceration in Afghanistan.

In spite ABC's narrow view of citizenship and domicile, Idema can have 50 residences if he so chooses— and unlimited mailing address.  As the Second Circuit Court of Appeals observed in *Wit v. Berman*, 306 F.3d 1256, 1262-1263 (2d Cir. 2002), a case involving dual residents of New York City and the Hamptons:

> "New York has responded to this administrative difficulty in a pragmatic way. New York courts have held that, rather than compel persons in appellants' circumstances to establish to the satisfaction of a registrar of voters or a court that one home or the other is their principal, permanent residence, they can choose between them [citation to Ferguson and O'Hara, *supra*, omitted]."

*Gallagher v. Dinkins*, 343 N.Y.S.2d 960 (App. Div. 1973) (holding that where an individual has two residences where he maintains significant and legitimate attachments, it is for him to decide which address he considers as his voting address), aff'd, 299 N.E.2d 681 (N.Y. 1973); *Bressler v. Holt-Harris*, 330 N.Y.S.2d 565 (App. Div. 1971).

**E.    CALIFORNIA LAW – CHOSEN BY THE ABC – ALLOWS EXTRINSIC EVIDENCE**

Much of the ABC's brief would be moot if it had just bothered to candidly admit to the Court the Choice of Law clause in the ABC-IDEMA contracts.  In *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, the California Supreme Court set forth the current test of admissibility of extrinsic evidence to interpret the contract.  The Court stated:

> The correct test for admissibility of extrinsic evidence is not whether the meaning appears plain and unambiguous on the face of the instrument, but whether the evidence is relevant to prove the meaning to which the language is reasonably susceptible.

*Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37. *See, also,* Cal. Civ. Proc. Code §1856 (c); *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1358 (2004).

---

[29] The proper term is Afghan, not "Afghani" as used in ABC's motion.  Afghani is the name of the Afghan currency— Afghani's are paper, Afghans are people.

With respect to the Choice of Law agreement, the California Parol Evidence Rule provides that prior or contemporaneous or collateral oral agreements may be shown, even though it relates to the same subject matter. *Masterson v. Sine*, 68 Cal. 2d 226-227 (1968).

While the Licensing Agreement specifically designates California and/or North Carolina as the choice of law, it does not preclude a suit in New York. The contracts provide "including United States Copyright Law" and gives choices of California and or North Carolina state law, but NEVER mentions Australian law.

The agreements would be governed under California law as to the interpretation and construction of the contract; however, it does not provide the applicable law for a claim based on unfair and deceptive acts, which would be North Carolina law. *United Dominion Indus., Inc. v. Overhead Door Corp.*, 762 F. Supp. 126 (W.D.N.C. 1991).

The law of North Carolina, where the last act occurred giving rise to the injury governs ABC's action under this Act. *United Va. Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 339 S.E.2d 90 (1986). The nature of the liability under this section is *ex delicto*, not *ex contractu*. *Lex loci delicti* determines the choice of law and the Court would ignore the contractual choice of law provision in the Licensing Agreement for Counterr Group and Idema's actions brought under North Carolina's Unfair and Deceptive Trade Practices Act.[30] *United Dominion Indus., Inc. v. Overhead Door Corp.*, *supra*.

---

[30] Contrary to ABC's claim that Australian law would suffice, North Carolina law would determine the claims under N.C.G.S. Chapter § 75 which not only protects individuals, but serves to protect business persons as well. *Concrete Serv. Corp. v. Investors Group, Inc.*, 76 N.C. App. 678, 340 S.E.2d 755, cert. denied, 317 N.C. 333, 346 S.E.2d 137 (1986). The term "business" generally imports a broad definition. *Bhatti v. Buckland*, 328 N.C. 240, 400 S.E.2d 440 (1991), *United Va. Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 339 S.E.2d 90 (1986). The statue is not intended to be limiting as to jurisdictional scope. The North Carolina legislature's action in 1977, deleting the limiting language of "dealings within the state" is interpreted as a desire to expand the scope of the act to the limits of North Carolina's long-arm statute. *Broussard v. Meineke Disct. Muffler Shops, Inc.*, 945 F. Supp. 901 (W.D.N.C. 1996). By deleting the geographic limitation from this section of law, the North Carolina General Assembly made this statute available to the "full extent permissible under conflicts of law principles and the Constitution." *American Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411 (E.D.N.C 1986).

In essence, the case could be transferred to California, North Carolina, or Washington, DC should ABC chose to request the Court follow the contract. However, it could not be transferred to Australia.

## III.  THE KNIGHTSBRIDGE DEFAULTS

With their answers due on July 28, 2008, three defendants have already defaulted, 1) Knightsbridge International, Inc. 2) Knightsbridge International Humanitarian Relief and Human Improvement Programs, Inc., 3) Edward Artis, and the Clerk of Courts has signed an Entry of Default (attached hereto as Exhibit 5). A defaulted defendant is deemed to "admit[] the plaintiff's well-pleaded allegations of fact." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975), *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Other than a few narrow exceptions, a defendant, once a default has been entered against him, is not entitled to raise any other defenses. Accordingly, procedural defenses, such as a motion to dismiss for *forum non conveniens*, which the Supreme Court has described as a "supervening venue provision," are lost. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 453, 114 S.Ct. 981, 988 (1994). These Defendants have waived any *forum non conveniens* claim by their default for failure to plead or otherwise defend. As the Supreme Court repeatedly has held, if a defendant is properly served with process by a court with subject matter jurisdiction, the defendant waives all claims of venue by defaulting. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *see also Commercial Casualty Ins. Co. v. Consolidated Stone Co.*, 278 U.S. 177 (1929); *Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd.*, 308 U.S. 165 (1939). Plaintiffs have a right to proceed to judgment in this Court on the Knightsbridge, *et al* defaults.

## IV  THE COURT SHOULD ALLOW PLAINTIFFS TO CONDUCT DISCOVERY TO ESTABLISH WITH ADDITIONAL SPECIFICITY THAT THE PREDICATE ACTS WERE COMMITTED IN THE UNITED STATES

ABC's motion is disingenuous in that it seeks to dismiss the complaint with the argument that none of the predicate acts occurred in the United States and yet fails to provide its initial disclosures, which may contradict its own argument. Federal Rules of Civil Procedure R. 26(a)(1) clearly provides that "a party must, without awaiting a discovery

request" provide initial disclosures.  ABC has refused to follow the Rule because "it would not be in their client's best interest." (Tiffany Decl ¶ 3).

Limited discovery is warranted in this case.  Courts have the discretion to allow discovery limited in nature prior to dismissing a case on a motion.  *See Alliance of American Insurers v. Cuomo*, 854 F.2d 591 (2nd Cir. 1988)("Before dismissing a case for want of jurisdiction, a court should permit the party seeking the court's intervention to engage in discovery of facts supporting jurisdiction);  *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986); *Williams v. Casey,* 657 F.Supp. 921, 925 (S.D.N.Y. 1987). Although plaintiffs believe that the pleadings have been plead with sufficient specificity to withstand any attacks on jurisdictional grounds, Plaintiffs' should be allowed to conduct at least limited discovery.

ABC's submission of affidavits in support of their motion further strengthens Plaintiffs' request for limited discovery.  Unlike a 12(b)(6) motion, where if evidentiary matters outside the pleadings are presented, the motion converts into a Rule 56 motion,  a motion under 12(b)(1) cannot be converted.  However, Courts have overwhelmingly found that Rule 56 is relevant to the jurisdictional challenge.  *Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126 (2nd Cir. 1976)("relevance of Rule 56 to a motion under Rule 12(b)(1) is that a body of decisions has developed under Rule 56 that offer guidelines which assist in resolving the problem encountered if the affidavits submitted on a 12(b)(1) motion should reveal the existence of factual problems. If this should occur, a court should consider allowing a party to utilize some of the procedures outlined in Rule 56(e), if this is requested").  In *Kamen*, *supra*, the Second Circuit stated that "in resolving claims that they lack jurisdiction, courts have acted in a fashion suggestive of 56(f): they have required that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party."  *Id at* 1011.

As provided in this brief, Plaintiffs have provided a list of factual issues raised by ABC in their motion that are in dispute.  Discovery would allow Plaintiffs' an opportunity to show two irrefutable critical factors—there is a choice of law contract between ABC and Idema and all of the predicate acts occurred in the United States.

CONCLUSION

In conclusion, Counterr Group and Idema are perplexed by ABC's misuse of a Rule 12 motion, especially when their attorneys possess contracts specifying the US courts as a choice of law.  It fails to cite any applicable or viable reason for dismissal. This conclusion needs no lengthy diatribe.  The facts are clear, the law is clear.  ABC's motion should be denied, and the Court should award such other relief as is just and warranted.

In the event that the Court deems any of the claims against defendants insufficiently pleaded, Plaintiffs request an opportunity to amend the Complaint, pursuant to Federal Rules of Civil Procedure. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.")

For the reasons stated above, Plaintiffs respectfully request that defendants' motion be denied in its entirety.

Respectfully submitted, August 18, 2008,


_____/s/_____
Vijayant Pawar (VP-7642)
*Counsel for Counter Terrorist Group US*
Law Offices of VIJAYANT PAWAR
35 Airport Road, Suite 330
Morristown, New Jersey 07960
Phone: (973) 267-4800
Fax:    (973) 215-2882
www.pawarlaw.com
Email: vpawar@pawarlaw.com


_____
J. K. Idema, *Plaintiff*
12 Jonathan Lane
Poughkeepsie, NY 12603
Fax:    480/246-5626


_____/s/_____
John Edwards Tiffany, Attorney (JT-7322)
*Lead Counsel for Counter Terrorist Group US*
Law Offices of John E. Tiffany P.C.
The Robert Treat Center
50 Park Place, 10th Floor,
Newark, New Jersey 07102
Tel:  (973) 242-3700
Fax: (973) 242-3799
www.JohnTiffanyLaw.com
Email: Jet@Jet4Law.com

# EXHIBITS

**Exhibit 1**

> **US Copyright Registration # VAu754-933** (registered on June 15, 2005), titled "TF-180 Turnover to Bagram MPs." Identified by Australian Broadcasting Corporation in their story as *"Not for release 1 Idema photo of a bound and masked man being retained by US soldiers."* (Complaint ¶ 35.1)

**Exhibit 2**

> **US Copyright Registration # VAu755-447** (registered on June 15, 2005), titled "TASK FORCE SABER 7 Interrogation Photo – May 2004," and alternatively titled "EPW2748 Monk Interrogation Photo – May 2004." Identified by Australian Broadcasting Corporation in their story as *"Not for release 2 A photo of Idema filming his alleged interrogation of an Iraqi 'terrorist'."* (Complaint ¶ 35.2)

**Exhibit 3**

> **US Copyright Registration # VAu755-440** (registered on June 15, 2005), titled "TASK FORCE SABER 7 With EPW MONK," and alternatively titled "EPW2766 Surgery Photo – May 2004." Identified by Australian Broadcasting Corporation in their story as *"Not for release 3 A photo of Idema tending to an alleged terrorist."* (Complaint ¶ 35.3)

**Exhibit 4**

> **US Copyright Registration # VAu754-932** (registered on June 15, 2005), titled "TASK FORCE SABER - EPW MONK Medivac Sequence May 2004," and alternatively titled "OP 3-6 Sequential Photo of injured EPW in Custody" (four Sequential Photographs, two of which, upon information and belief, were used by ABC).

**Exhibit 5**

> **Clerk of Courts- SDNY – Entry of Default**

> a) Knightsbridge International Humanitarian Relief and Human Improvement Programs, Inc.
> b) Knightsbridge International, Inc.

# EXHIBITS

**Exhibit  1**

    **US Copyright Registration # VAu754-933** (registered on June 15, 2005), titled "TF-180 Turnover to Bagram MPs." Identified by Australian Broadcasting Corporation in their story as *"Not for release 1 Idema photo of a bound and masked man being retained by US soldiers."* (Complaint ¶ 35.1)

**Exhibit  2**

    **US Copyright Registration # VAu755-447** (registered on June 15, 2005), titled "TASK FORCE SABER 7 Interrogation Photo – May 2004," and alternatively titled "EPW2748 Monk Interrogation Photo – May 2004." Identified by Australian Broadcasting Corporation in their story as *"Not for release 2 A photo of Idema filming his alleged interrogation of an Iraqi 'terrorist'."* (Complaint ¶ 35.2)

**Exhibit  3**

    **US Copyright Registration # VAu755-440** (registered on June 15, 2005), titled "TASK FORCE SABER 7 With EPW MONK," and alternatively titled "EPW2766 Surgery Photo – May 2004." Identified by Australian Broadcasting Corporation in their story as *"Not for release 3 A photo of Idema tending to an alleged terrorist."* (Complaint ¶ 35.3)

**Exhibit  4**

    **US Copyright Registration # VAu754-932** (registered on June 15, 2005), titled "TASK FORCE SABER - EPW MONK Medivac Sequence May 2004," and alternatively titled "OP 3-6 Sequential Photo of injured EPW in Custody" (four Sequential Photographs, two of which, upon information and belief, were used by ABC).

**Exhibit  5**

    **Clerk of Courts- SDNY – Entry of Default**

    a)  Knightsbridge International Humanitarian Relief and Human Improvement Programs, Inc.
    b)  Knightsbridge International, Inc.

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form VA**
For a Work of the Visual Arts

**VAu 754–933**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
*VAU0007545933*

EFFECTIVE DATE OF REGISTRATION

**JUN 15 2005**

Month   Day   Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**Title of This Work ▼**

TF-180 Turnover to Bagram MPs

**NATURE OF THIS WORK ▼ See instructions**

Photograph

**Previous or Alternative Titles ▼**

TF SABER7 Taliban EPW Turnover at Bagram

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼     Number ▼     Issue Date ▼     On Pages ▼

---

**NAME OF AUTHOR ▼**

Jack Idema

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

1956

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of **United States**
Domiciled in **United States**

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes   ☑ No
Pseudonymous?   ☐ Yes   ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture     ☐ Map     ☐ Technical drawing
☐ 2-Dimensional artwork     ☑ Photograph     ☐ Text
☐ Reproduction of work of art     ☐ Jewelry design     ☐ Architectural work

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**Name of Author ▼**

Counterr Group

**Dates of Birth and Death**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of **USA**
Domiciled in **USA**

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes   ☑ No
Pseudonymous?   ☐ Yes   ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture     ☐ Map     ☐ Technical drawing
☐ 2-Dimensional artwork     ☑ Photograph     ☐ Text
☐ Reproduction of work of art     ☐ Jewelry design     ☐ Architectural work

---

**Year in Which Creation of This Work Was Completed**
2004
This information must be given
Year in all cases.

**Date and Nation of First Publication of This Particular Work**
Complete this information Month     Day     Year
ONLY if this work has been published.
Nation

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Jack Idema & Counterr Group (
PO Box 691, Fayetteville, NC 28302-0691

by writen agreement)

APPLICATION RECEIVED
**JUN 15 2005**
ONE DEPOSIT RECEIVED
**JUN 15 2005**
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of __2__ pages

EXAMINED BY _____ WB

CHECKED BY

☑ CORRESPONDENCE
   Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☑ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼              **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                                        **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

William London III, Attorney, c/o PO Box 152, Sanford, NC 27331

Area code and daytime telephone number   ( 919 ) 774-3808                    Fax number   ( 919 ) 776-2333

Email

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Jack Idema                                                        Date   April 19, 2005

Handwritten signature (X) ▼

X _____ _Jurella_____

| Certificate<br>will be<br>mailed in<br>window<br>envelope<br>to this<br>address: | **Name** ▼<br>William London III, Attorney At Law |
| | **Number/Street/Apt** ▼<br>c/o PO Box 152 |
| | **City/State/ZIP** ▼<br>Sanford, NC 27331 |

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to *Register of Copyrights*
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: August 2003—30,000  Web Rev: June 2002   ☺ Printed on recycled paper                    U.S. Government Printing Office: 2003-496-605 60,029

Attachment to Copyright Form –
"TF-180 Turnover to Bagram MPs" aka "TF SABER7 Taliban EPW Turnover"



**Both versions of this picture are being copyrighted together as one work.**
**The Paint Shop Text on the left was also added by Jack Idema**

9197762333                                    P. 10

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form VA**
For a Work of the Visual ...

**VAu755-447**

EFFECTIVE DATE OF REGISTRATION

**JUN 15 2005**
Month        Day        Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**Title of This Work ▼**                                    **NATURE OF THIS WORK ▼** See Instructions

TASK FORCE SABER 7 Interrogating EPW MONK                   Photograph

**Previous or Alternative Titles ▼**

EPW2748 Monk Interrogation Photo - May 2004

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give: **Volume ▼**      **Number ▼**      **Issue Date ▼**      **On Pages ▼**

---

**NAME OF AUTHOR ▼**

Jack Idema aka JK Idema

**DATES OF BIRTH AND DEATH**
**Year Born ▼        Year Died ▼**
1956

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of **United States**
     Domiciled in **United States**

**Was This Author's Contribution to the Work**
Anonymous?      ☐ Yes   ☑ No
Pseudonymous?   ☐ Yes   ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate boxes. **See Instructions**
☐ 3-Dimensional sculpture      ☐ Map                ☐ Technical drawing
☐ 2-Dimensional artwork        ☑ Photograph         ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design     ☐ Architectural work

---

**Name of Author ▼**

Counterr Group - empoyer for hire of Captain Brent Bennett

**Dates of Birth and Death**
**Year Born ▼        Year Died ▼**

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of **USA**
     Domiciled in **USA**

**Was This Author's Contribution to the Work**
Anonymous?      ☐ Yes   ☑ No
Pseudonymous?   ☐ Yes   ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate boxes. **See Instructions**
☐ 3-Dimensional sculpture      ☐ Map                ☐ Technical drawing
☐ 2-Dimensional artwork        ☑ Photograph         ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design     ☐ Architectural work

---

**Year in Which Creation of This Work Was Completed**
2004
This information must be given
Year in all cases.

**Date and Nation of First Publication of This Particular Work**
Complete this information Month ____ Day ____ Year ____ Nation
ONLY if this work has been published.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

J. K. Idema & Counterr Group (
PO Box 691, Fayetteville, NC 28302-0691

by writen agreement

APPLICATION RECEIVED
**JUN 15 2005**
ONE DEPOSIT RECEIVED
**JUN 15 2005**
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

---

**MORE ON BACK ▶**
• Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.
• Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ____ pages

| EXAMINED BY | _url_ | FORM VA |
| CHECKED BY | | |
| CORRESPONDENCE ☑ Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼       **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                    **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

William London III, Attorney,  c/o PO Box 152, Sanford, NC 27531

Area code and daytime telephone number ( 919 ) 774-3808          Fax number ( 919 ) 776-2333

Email  skip0628@hotmail.com

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Jack Idema                                                    Date April 19, 2005

**Handwritten signature (X)** ▼

X _signature_

| Certificate will be mailed in window envelope to this address: | **Name** ▼ William London III, Attorney At Law |
| | **Number/Street/Apt** ▼ c/o PO Box 152 |
| | **City/State/ZIP** ▼ Sanford, NC 27531 |

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: August 2003—30,000   Web Rev. June 2002   ⊚ Printed on recycled paper

U.S. Government Printing Office: 2003-496-605/60.029

**Attachment to Copyright Form –**
**"Task Force SABER 7 Interrogating EPW MONK"**
**aka "EPW2748 Interrogation Photo" May 2004**





9197762333

p.24

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form VA**
For a Work of the Visual Arts

**VAu 755–440**

VAU

EFFECTIVE DATE OF REGISTRATION

**JUN 15 2005**

Month    Day    Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**Title of This Work ▼**

TASK FORCE SABER 7 With EPW MONK

**NATURE OF THIS WORK ▼** See Instructions

Photograph

**Previous or Alternative Titles ▼**

EPW2766 Surgery Photo – May 2004

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, re collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give: **Volume ▼**    **Number ▼**    **Issue Date ▼**    **On Pages ▼**

---

**NAME OF AUTHOR ▼**

Jack Idema aka JK Idema

**DATES OF BIRTH AND DEATH**
**Year Born ▼    Year Died ▼**

1956

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of  **United States**
Domiciled in  **United States**

**Was This Author's Contribution to the Work**
Anonymous?  ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**Nature of Authorship** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☑ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**Name of Author ▼**

Counterr Group – employer for hire of Captain Brent Bennett

**Dates of Birth and Death**
**Year Born ▼    Year Died ▼**

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of  **USA**
Domiciled in  **USA**

**Was This Author's Contribution to the Work**
Anonymous?  ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☑ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

**Year in Which Creation of This Work Was Completed**

2004
Year    This information must be given in all cases.

**Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published.
Month _____ Day _____ Year _____
Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

J. K. Idema & Counterr Group (
PO Box 691, Fayettville, NC 28302-0691

: by Written Agreement)

APPLICATION RECEIVED
JUN 15 2005
ONE DEPOSIT RECEIVED
JUN 15 2005
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

See instructions before completing this space.

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE

Page 1 of 2 pages

EXAMINED BY _W£3_                    **FORM VA**

CHECKED BY

☑ CORRESPONDENCE                    FOR
    Yes                             COPYRIGHT
                                    OFFICE
                                    USE
                                    ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼                              **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

William London III, Attorney,  c/o PO Box 152, Sanford, NC 27331

Area code and daytime telephone number  ( 919 ) 774-3808       Fax number   ( 919 ) 776-2333

Email  skip0628@hotmail.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Jack Idema                                          Date  April 19, 2005

Handwritten signature (X) ▼

X _(signature)_

Certificate
will be
mailed in
window
envelope
to this
address:

**Name** ▼
William London III, Attorney At Law

**Number/Street/Apt** ▼
c/o PO Box 152

**City/State/ZIP** ▼
Sanford, NC 27331

• Complete all necessary spaces
• Sign your application in space 8
**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money
   order payable to *Register of Copyrights*
3. Deposit material
**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: August 2003—30,000   Web Rev: June 2002   ℗ Printed on recycled paper

U.S. Government Printing Office: 2003-496-605/60,029

**Attachment to Copyright Form –**
**"Task Force SABER 7 With EPW MONK"**
**aka "EPW2766 Surgery Photo"**



**This Picture is Being Copyrighted as is as the Only Version**
**With the Paint Shop Notation Placed by Author**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form VA**

VAu 754 – 932

|||
|---|---|
| VA | VAU |

**EFFECTIVE DATE OF REGISTRATION**

**JUN 15 2005**

| Month | Day | Year |

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**Title of This Work ▼**

TASK FORCE SABER - EPW MONK Medivac Sequence May 2004

**NATURE OF THIS WORK ▼** See Instructions

Sequential Photographs (4)

**Previous or Alternative Titles ▼**

OP 3-6 Sequential Photos of injured EPW in Custody

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NAME OF AUTHOR ▼**

Jack Idema aka JK Idema

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

1956

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of __United States__
Domiciled in __United States__

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes    ☑ No
Pseudonymous?    ☐ Yes    ☑ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate boxes. **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☑ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**Name of Author ▼**

Counterr Group - Employer For Hire of Zabullah

**Dates of Birth and Death**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of __USA__
Domiciled in __USA__

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes    ☑ No
Pseudonymous?    ☐ Yes    ☑ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate boxes. **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☑ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

**Year in Which Creation of This Work Was Completed**

2004    This information must be given    Year in all cases.

**Date and Nation of First Publication of This Particular Work**
Complete this information Month _____ Day _____ Year _____
ONLY if this work has been published.    Nation _____

---

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

J. K. Idema & Counterr Group (
PO Box 691, Fayetteville, NC 28302-0691

by written agreement)

**APPLICATION RECEIVED**
**JUN 15 2005**
ONE DEPOSIT RECEIVED
**JUN 15 2005**
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of __ pages

EXAMINED BY ___urb___                    **FORM VA**

CHECKED BY

☑ CORRESPONDENCE                         FOR
   Yes                                   COPYRIGHT
                                         OFFICE
                                         USE
                                         ONLY

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

---

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

---

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼                                **Account Number** ▼

---

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

William London III, Attorney, c/o PO Box 152, Sanford, NC 27331

Area code and daytime telephone number  ( 919 ) 774-3808          Fax number  ( 919 ) 776-2333

Email  skip0628@hotmail.com

---

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
                        Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Jack Idema                                          **Date** April 19, 2005

**Handwritten signature (X)** ▼

X _____(signature)_____

---

Certificate
will be
mailed in
window
envelope
to this
address:

**Name** ▼
William London III, Attorney At Law

**Number/Street/Apt** ▼
c/o PO Box 152

**City/State/ZIP** ▼
Sanford, NC 27331

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

Fees are subject to change. For current fees, check the Copyright Office website at www.copyright.gov, write the Copyright Office, or call (202) 707-3000.

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: August 2003—30,000   Web Rev: June 2002   ♺ Printed on recycled paper                    U.S. Government Printing Office: 2003-496-605/60.029

**Attachment to Copyright Form –**
**"Task Force SABER 7 EPW MONK Medivac Sequence – May 2004"**
**aka "OP 3-6 Sequential Photos of injured EPW in Custody"**



Op3 Enemy Prisoner in Custody Redacted          Op4 Enemy Prisoner in Custody Redacted



Op 5 EPW Getting Medivac Redacted          Op6 EPW Restrained For Exfil Redacted

**These Pictures are Being Copyrighted as a sequential group**
**With the Paint Shop Notations Placed by Author**
**And as the Only Version Available**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUSTRALIAN BROADCASTING CORP.; ) <br> *aka* ABC AUSTRALIA; ) <br> ABC CORPORATIONS 1-100; ) <br> LIZ JACKSON; ERIC CAMPBELL; ) <br> JOSEPH A. CAFASSO; EDWARD A. ARTIS; ) <br> KNIGHTSBRIDGE INTERNATIONAL, Inc.; ) <br> KNIGHTSBRIDGE INTERNATIONAL ) <br> HUMANITARIAN RELIEF AND HUMAN ) <br> IMPROVEMENT PROGRAMS, INC.; ) <br> ROBERT C. MORRIS; ) <br> PARTNERS INTERNATIONAL FOUNDATION; ) <br> WILLIAM JOHN HAGLER, ) <br> Both Individually and Severally, ) <br> and DOES 1 through 7, inclusive, ) <br>         *Defendants.* ) <br> ) | **NOTATION OF DEFAULT** <br><br> **Case #: 08-CV-2356 (DAB)** |

I, J. Michael McMahon, Clerk of Court of the United States District Court for the

Southern District of New York, do hereby certify that defendants Knightsbridge

International, Inc. and Knightsbridge International Humanitarian Relief and Human

Improvement Programs, Inc. have not filed an answer or otherwise moved with respect to

the complaint herein.

The default of defendants, **Knightsbridge International, Inc.** and **Knightsbridge**

**International Humanitarian** Relief and Human Improvement Programs, Inc. is hereby

noted pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

Dated: New York, New York,

August ___, 2008

         J. MICHAEL McMAHON
         Clerk of Court

      By: _____
           Deputy Clerk